LCLAIBORNE, Judge Pro Tem.
In this appeal from juvenile court, the foster parents of K.A.M. appeal a trial court decision that removed from state custody the minor child in their care and granted the custody and care of said child to her paternal grandparents. After a thorough review of the record, we reverse and remand.
On April 8, 1997, K.A.M. was born at Earl K. Long Hospital. The child was considered to be “high-risk” and had to be given oxygen for six days because her mother received no prenatal care. Ten days later, tests confirmed the presence of cocaine in the child’s system at birth. Consequently, K.A.M. was removed from the custody of her mother, who in addition to her drug addiction, had no permanent place to live and no financial means to support the child. (At that time, the child’s paternity had not been established.) The child was discharged from Earl K. long and was placed in foster care with Henry and Melissa Wallis (foster parents).
On April 22, 1997, a hearing was held at which time it was revealed that K.A.M. was her unmarried mother’s fifth child, and the second to be born with cocaine in her system. The custody of the child was continued with the State and the State was ordered to institute proceedings to adjudicate the child in need of care. A hearing was scheduled for July 24, 1997; however, on the date of the hearing the child’s mother could not be located, and the matter was scheduled for adjudication on September 18, 1997. The child was subsequently adjudicated in need of care at the September hearing. The custody of the child continued with the State until a May 4, 1999 hearing during which it was revealed that the child’s father, who had been absent since the child’s birth, had taken a DNA paternity test and had acknowledged paternity by a notarial act. After the hearing, the trial court, based on its understanding that the parties had reached an agreement, maintained custody with the State “contingent on the actual physical care and control” of |3the child being placed with her paternal grandparents, said change of custody scheduled to become effective on May 10, 1999.
On July 6, 1999, the foster parents who had cared for the child for more than two years petitioned the court seeking an opportunity to be heard and to present evidence concerning the best interests of the child with regard to permanent placement. At a hearing on August 6, 1999, the foster parents’ request to be heard and to present evidence was denied. On August 31, 1999, a judgment was signed relieving the State of its custody and ordering that the legal care, custody and control and the physical custody of the minor child, K.A .M.. be granted to Mr. and Mrs. Homer Nabors, the child’s paternal grandparents.[2] The judgment also provided that the foster parents would be granted no visitation rights with the child.
The foster parents appeal the judgment assigning error to the trial court’s change of custody, its denial of visitation rights to the foster parents and its denial of the foster parents’ request to be present and to be heard regarding the permanent placement of K.A.M.
*697 According to the foster parents, they were not given notice of the May 4, 1999 hearing concerning the permanent placement of the child who had been in their care since the middle of 1997. It was at this May 1999 hearing that the trial court, based on its understanding that an agreement had been reached between the parties, stated its intentions of placing the physical custody and control of the child with its paternal grandparents. However, the foster parents were not notified nor present at that hearing. The first notice they received concerning the permanent placement of the child was for the August 6, 1999 hearing. They attended that hearing and requested an opportunity to be heard and to present evidence, which request was denied based on the trial court’s conclusion that they had no standing to assert such 1¿rights since they were not the child’s “blood relatives” and since they had not been given actual custody of the child.
Title VI of the Louisiana Children’s Code, governing the adjudication of children in need of care, provides as its stated purpose, in Ch.C. Art. 601, “[t]he health, safety, and best interest of the child shall be the paramount concern in all proceedings under this Title.” Initially, the placement of a child taken into custody is governed by La. Ch.C. Art. 622, which originally provided, “[a] child taken into custody as a child in need of care shall be placed only in foster care.” (emphasis added) However, by La. Acts 1997, No. 1152, § 1, a pro-relative placement policy became a part of La. Ch.C. Art. 622, which pursuant to the amendment, provides that a child taken into custody as a child in need of care “shall be placed in the home of a suitable relative who is of the age of majority and who is willing to assume such care of the child if such placement is in the best interest of the child. ” (emphasis added).
Regarding the disposition of a child in need of care, La. Ch.C. Art. 683 directs the court to impose the least restrictive disposition of the alternatives enumerated in Article 681 which the court finds is consistent with the circumstances of the case, the health and safety of the child, and the best interest of society. Ch.C. Art. 683 A. By legislative Acts 1999, No. 1317 § 2, effective August 15, 1999, paragraph B was added to provide the court shall place the child in the custody of a relative unless the court has made a specific finding that such placement is not in the best interest of the child. It also directs the trial court to give specific written reasons for its findings and to make them a part of the record of the proceedings.
Regarding case review hearings, La. Ch.C. Art. 695 A. provides that the department shall give notice of the right to appear to all foster parents who have exercised physical custody of the child, and paragraph B specifies that the requisite notice shall inform the foster parent of the day, time, and place of the hearing as well as his right to attend the hearing and be | ^available as a witness. The Comment to the article states that the intent of the article is “to enunciate the role of foster parents in review hearings” and to recognize “the need of foster parents to be aware of developments discussed in the court hearing and the contributions that foster parents can make to the court’s proper appreciation of the child’s development, adjustment, and needs.” Paragraph B was amended by La. Acts 1999, No. 449, § 1, effective July 1, 1999, to provide that the foster parent has a right to be heard rather than “be available as a witness.” Similar provisions exist regarding foster parents’ rights relative to permanency hearings. See La. Ch.C. Art. 705 A. and B.
Thus, clearly, the foster parents in this case, who had raised the child for approximately two years prior to this matter, had a right to be notified of the date and time of the case review and permanency hearings, as well as a right to be available as a witness. Although the legal custody of the child was with the State, the foster parents had the requisite “physical custody” of the *698 child within the meaning of Ch.C. Art. 695 by having actual physical control as a result of placement by the department. Therefore, the trial court erred as a matter of law in denying the foster parents’ request to be present. Furthermore, because the statute was amended effective July 1, 1999, the foster parents now also have a right to “be heard” in addition to their right to be present and available as witnesses.
Accordingly, we reverse the trial court’s denial of the foster parents’ request to be present and be heard, and remand this matter to the trial court for a hearing at which the foster parents will have an opportunity to be heard. Costs of this appeal are assessed to the State in the amount of $218.85.
REVERSED AND REMANDED.

. We note that no proceedings have been instituted to terminate the parental rights.