2012 UT 9

**Kay Lynn HANSEN, Plaintiff and Respondent,**

v.

**Steven L. HANSEN, Defendant and Petitioner.**

No. 20090556.

Supreme Court of Utah.

Feb. 3, 2012.

Ann L. Wassermann, South Jordan, for plaintiff.

F. Kevin Bond, Budge W. Call, Salt Lake City, for defendant.

Justice LEE, opinion of the Court:

¶ 1 In this case we are asked to clarify the standards for redirection of child support payments under Utah Code section 78B–12–108. The support order at issue here required petitioner Steven Hansen to pay child support to his ex-wife, but he subsequently sought to redirect his support payments to a homeless shelter where the child resided for a period of time. Because the homeless shelter is not a party to these proceedings and is legally ineligible to become the child's physical custodian in any event, we affirm the decision of the court of appeals and hold that the district court correctly declined to order redirection of child support to the shelter.

I

¶ 2 Steven and Kay Hansen divorced in Iowa in 1998. The divorce court awarded the couple joint custody of their daughter, J.H. At that time, Kay was granted sole physical custody of J.H., and Steven was ordered to pay monthly child support to Kay. Steven subsequently moved to California, and Kay to Utah. J.H. left her mother's home on October 1, 2006. After various stays with grandparents, other family members, and a state-run facility, J.H. entered a private homeless shelter, called Volunteers of America Utah Transition Home (VOA), on July 18, 2007. J.H. left VOA at Kay's request on August 17, 2007. She returned to VOA on October 9, 2007, however, and remained there through her eighteenth birthday.

¶ 3 On April 25, 2008, Steven filed a petition to redirect child support from Kay to VOA, where J.H. was then living. On May 15, 2008, a hearing on Steven's petition was held before a commissioner. Steven argued that because J.H. resided at VOA and VOA provided for her daily needs, redirection was necessary so that the support payments would be used for J.H.'s benefit. Steven premised his argument on Utah Code section 78B–12–108(1), which provides generally that child support is "for the use and benefit of the child and shall follow the child." Kay responded that she should continue to receive child support because, although J.H. no longer resided with her, she continued to pay for J.H.'s primary care, including buying clothing for J.H., paying for her school registration fees, and transporting J.H. to and paying for her dental, medical, and therapy appointments.

¶ 4 The commissioner recommended denial of Steven's motion to redirect child support payments. He reasoned that Kay remained J.H.'s physical custodian, that VOA did not become the new physical custodian by mere provision of sustenance and shelter, and that the support statute accordingly did not allow for payments to be redirected to VOA. The district court accepted the commissioner's recommendation and denied Steven's motion. Steven appealed to the court of appeals.

¶ 5 The court of appeals affirmed the district court's denial of Steven's motion. See *Hansen v. Hansen*, 2009 UT App 152U, 2009 WL 1636017. The court based its decision on Utah Code section 78B–12–108(2), which allows for automatic redirection of child support "when physical custody changes" to (1) a parent, (2) a relative, or (3) the state. Apparently reading the term "when physical custody changes" as a restriction on the

more general proviso in Utah Code section 78B–12–108(1) that child support "shall follow the child," the court held that Kay had "not lost physical *custody* of the child" and that the district court accordingly "did not err in concluding that Utah Code section 78B–12–108(1) does not require child support payments to be redirected" to VOA. *Id.* para. 3. Kay remained J.H.'s physical custodian, the court reasoned, because she "remain[ed] liable for the support of the child, including the responsibility to pay school fees, buy clothing, transport her to doctor and counseling appointments, attend to her medical needs, and pay her medical expenses." *Id.*

¶ 6 Steven filed a petition for writ of certiorari to this court. We granted Steven's petition on two issues: (1) whether Utah Code section 78B–12–108(1) requires that the child support payments be redirected in this case and (2) whether the district court and court of appeals erred in construing or applying the provisions of section 78B–12–108(2) in this case.

## II

¶ 7 The support statute contains two provisions: (1) a general statement that support shall follow the child and (2) a specific provision providing guidelines for redirection of child support to a new physical custodian. Specifically, the statute provides as follows:

(1) Obligations ordered for child support and medical expenses are for the use and benefit of the child and shall follow the child.

(2) Except in cases of joint physical custody and split custody as defined in Section 78B–12–102, when physical custody changes from that assumed in the original order, the parent without physical custody of a child shall be required to pay the amount of support determined in accordance with Sections 78B–12–205 and 78B–12–212, without the need to modify the order for:

(a) the parent who has physical custody of the child;

(b) a relative to whom physical custody of the child has been voluntarily given; or

(c) the state when the child is residing outside of the home in the protective custody, temporary custody, or custody or care of the state or a state-licensed facility for at least 30 days.

UTAH CODE § 78B–12–108.

¶ 8 Steven contends that subsection (1) governs this case and that his child support should have been redirected to "follow" J.H. to VOA. In Steven's view, the predicate for redirection of child support was established when VOA provided room and board for J.H. Because child support is "for the use and benefit of the child," Steven asserts that his child support payments should "follow the child" to VOA under subsection (1), without regard to whether the rights and obligations attendant to physical custody have changed.

¶ 9 As for subsection (2), Steven asserts that the redirection provision merely "facilitate[s] the mandate in subsection (1) by automatically shifting the direction of child support without a court order to certain persons or entities." Steven insists that there is nothing in subsection (2) that prevents a party from seeking a ruling from the court to direct child support payments to follow the child to another entity as prescribed by subsection (1). Steven thus views subsection (1) as ultimately controlling, and accordingly challenges the district court and the court of appeals for treating subsection (2) as preventing them from ordering a redirection of child support.

¶ 10 We find this view untenable and affirm the lower courts' interpretation of the statute. Subsection (1)'s general directive cannot possibly be interpreted unqualifiedly, as Steven suggests, to redirect support payments any time anyone provides any shelter or sustenance to a child. If that were the law, support payments would have to be divvied out to every neighbor who offered up a peanut butter sandwich or a lollipop to a child of divorced parents. The logistical implications of this approach ought to give us cause for concern, as it would inject doubt and mischief into a legal regime where certainty and forthrightness are paramount.

¶ 11 The broad, literal construction that Steven affords to subsection (1), moreover, would rob the terms of subsection (2) of their

plain meaning. Subsection (2) specifically authorizes redirection of child support only "when physical custody changes from that assumed in the original order." This specific limitation modifies the general statement in subsection (1) that child support "follow the child." And ultimately Steven's position fails under the plain text of the statute, as it construes a general statement of statutory purpose in a way that would override a specific standard for implementing that purpose. *See, e.g., Dairyland Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 882 P.2d 1143, 1146 (Utah 1994) (noting "the established rule that when two provisions [of a statute] address the same subject matter and one provision is general while the other is specific, the specific provision controls").

¶ 12 Subsection (1)'s general principle says nothing about the circumstances under which child support payments are to be redirected. That is dictated instead by subsection (2), which provides for redirection of support payments upon a change in "physical custody," a term of art that draws a clear distinction between the neighbor who offers a peanut butter sandwich and a person who is legally given a duty to care for and supervise a child. The neighbor lacks the quality of a physical custodian (despite her charitable offering of sustenance) because she lacks any legal right or responsibility to supervise or control the child. Any person or entity in that position likewise fails to qualify as a custodian.[1]

¶ 13 Thus, to harmonize and give meaning to both provisions, we hold that child support may be redirected only to a person who acquires "physical custody" of the child under the law. Because subsection (2) allows redirection of child support without modification of the support order only when custody changes to a parent, relative, or the state, we also hold that modification of the support order would be required in a case like this one where the new putative custodian is someone other than those three listed types of custodians.

¶ 14 In so doing, we adopt a concept of "physical custody" in line with that embraced by the court of appeals. Specifically, we hold that "physical custody" requires more than the mere provision of shelter and sustenance. In Utah and elsewhere, physical custody implicates the right and responsibility of supervision and control. Such custody is granted only prospectively, moreover, in accordance with grounds and procedures set forth expressly by statute. The homeless shelter at issue here never asked to be deemed the child's physical custodian under the law and is not legally eligible to do so anyway. We accordingly hold that physical custody has not changed to VOA and thus affirm the court of appeals' decision upholding the denial of Steven's motion.

A

¶ 15 Physical custody has long been understood to involve much more than actual possession and care of a child. A physical custodian also has a legal responsibility to provide supervision and control. The Utah Code expressly defines physical custody as encompassing both "care *and supervision*," Utah Code § 78B–13–102(14) (emphasis added), and "supervision" encompasses a duty of "general management, direction, or control; oversight, superintendence," 17 Oxford English Dictionary 245 (2d ed. 1989).[2]

¶ 16 The notion of "custody" as encompassing not just actual care but also a legal duty to provide control and supervision is widely

---

1. That is not to say that a non-custodian could never be entitled to seek to recover support from a parent. But the right of a third party to "recover support from the natural or adoptive parent," *see* Utah Code § 78B–12–106(3), is not at all the same thing as a right to have all support payments redirected to a third party. VOA has not sought to recover support from Steven, so the statutory right of recovery by third parties is inapplicable. And the recovery provision in section 106 is not implicated in a case involving wholesale redirection of child support. That question is governed by section 108, and that section provides for redirection of child support only "when physical custody changes." *Id.* § 78B–12–108(2).

2. *See also* Webster's Third New International Dictionary 2296 (1986) (defining "supervise" as "to look over, inspect, oversee"); Black's Law Dictionary 1576 (9th ed. 2009) (defining "supervision" as "[t]he act of managing, directing, or overseeing persons or projects").

recognized. Family law treatises consistently define custody as "[a] bundle of constituent *rights and obligations to a child's possession, care, and control*,"[3] and explain that "the essence of custody ... is control over all aspects of the child's life coupled with responsibility for the child's welfare."[4] Standard dictionary definitions of custody are to the same effect.[5]

¶ 17 Custody is often divided into two subsets: legal and physical custody. Both encompass a duty of control and supervision.[6] While legal custody carries the "power and duty to make the most significant decisions about a child's life and welfare," physical custody involves the right, obligation, and "authority to make necessary day-to-day decisions concerning the child's welfare."[7] Although the latter is limited to the right to control the child's daily activities, it still involves a right of control.[8] This grant of authority is "necessary so that the [custodian] can control and discipline the child or make emergency medical or surgical decisions for the child."[9]

¶ 18 Case law and statutes in jurisdictions throughout the United States confirm that physical custody involves more than actual possession and care of the child.[10] In a case where a grandmother claimed physical custody of her grandchild who had been living with her, for example, the Arizona Court of Appeals noted that physical custody "relates to the custodial rights involved in the care and control of the child. Physical custody in this sense does not equate to having actual, immediate control of the physical presence of the child[;] rather it is the legal right to control the child." *Webb v. Charles*, 125 Ariz. 558, 611 P.2d 562, 565 (Ariz.Ct.App. 1980).[11] Other courts have expressed similar views.[12] The Montana Supreme Court ex-

3. LYNN D. WARDLE, CHRISTOPHER L. BLAKESLEY & JACQUELINE Y. PARKER, CONTEMPORARY FAMILY LAW: PRINCIPLES, POLICY, AND PRACTICES § 39.01 (1989) (emphasis added).

4. SANDRA MORGAN LITTLE, CHILD CUSTODY & VISITATION LAW AND PRACTICE § 10.03(1) (2011).

5. *See* BLACK'S LAW DICTIONARY 441 (9th ed. 2009) (defining "custody" as "[t]he care and control of a thing or person for inspection, preservation, or security"); WEBSTER'S NEW WORLD LAW DICTIONARY 115 (Susan Ellis Wild ed., 2006) ("The physical control over a minor awarded by a court to a parent in a divorce or separation proceeding."); 4 OXFORD ENGLISH DICTIONARY 167 (2d ed. 1989) ("Safe keeping, protection, defence [sic]; charge, care, guardianship."); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 343 (1986) ("1a: the act or duty of guarding and preserving (as by a duly authorized person or agency) ... b: protection, care, maintenance, and tuition....").

6. *See Robertson v. Wentz*, 187 Cal.App.3d 1281, 1294, 232 Cal.Rptr. 634 (1986) ("The law recognizes a distinction between legal and physical custody of a child, but both are considered 'custody.' ... '[C]ustody,' whether physical or legal, contemplates parental input into decisions which affect the child.").

7. LITTLE, *supra* note 4, § 10.03(3)(b)(i), (iii) (internal quotation marks omitted); *see also id.* § 13.01(4).

8. *See* ARNOLD H. RUTKIN, FAMILY LAW AND PRACTICE § 32.08(2)(b) (2010) ("Joint physical custody envisions parents sharing on a nearly equal basis the day-to-day control and decision making with respect to the child.").

9. LITTLE, *supra* note 4, § 10.03(3)(b)(i).

10. *See, e.g., Ronchetti v. Kulawiak (In re Custody of Kulawiak)*, 256 Ill.App.3d 956, 194 Ill.Dec. 934, 628 N.E.2d 431, 435 (1993) ("Physical possession of the child alone is insufficient.... Physical custody requires more than overnight contact.").

11. *See also In re Appeal in Maricopa Cnty. Juvenile Action No. JD–05401*, 173 Ariz. 634, 845 P.2d 1129, 1136 (Ariz.Ct.App.1993).

12. *See, e.g., Ysla v. López*, 684 A.2d 775, 777–78 (D.C.1996) ("Legal custody refers to the authority and duty to make long-range decisions concerning the child's life.... Physical custody comprises the residuum—physical control over the child and those decisions attendant to such immediate control."); *In re Petition of Kirchner*, 164 Ill.2d 468, 208 Ill.Dec. 268, 649 N.E.2d 324, 335 (1995) ("[P]hysical possession is not the same as physical custody.... The determination that a parent does not have physical custody of a child turns not on possession; rather, it requires that that parent somehow has voluntarily and indefinitely relinquished custody of the child."), *overruled on other grounds by In re R.L.S.*, 218 Ill.2d 428, 300 Ill.Dec. 350, 844 N.E.2d 22 (2006); *Moore v. Asente*, 110 S.W.3d 336, 358 (Ky.2003) ("[W]e hold that physical custody for the purposes of establishing standing requires more than actual possession and control of a child [but requires] ... a showing that the parent has somehow voluntarily and indefinitely relinquished custody of the child." (internal quotation marks omitted)); *State ex rel. K.A.M.*, 763 So.2d 695, 697–98 (La.App.2000) ("[F]oster parents

plained, for example, that "[t]o interpret this phrase otherwise would allow a nonparent to file a petition for custody·anytime the child is out of the physical presence of the parent or parents, even if for a few minutes, or under the watchful eyes of an authorized babysitter." *Henderson v. Henderson,* 174 Mont. 1, 568 P.2d 177, 179 (1977).[13]  A number of states have adopted a similar conception of custody by statute, codifying the legal duty of control or supervision as the essential hallmark of "custody." [14]

¶ 19 Because the Utah support statute adopts a legal term of art ("physical custody") with a settled meaning in the law, we interpret the statute to embrace the meaning of the term as it is understood in that context.  *See Kelson v. Salt Lake Cnty.,* 784 P.2d 1152, 1156 (Utah 1989) ("[A]bsent express direction to the contrary, we presume that a term of art used in a statute is to be given its usual legal definition."); *see also Henry v. United States,* 251 U.S. 393, 395, 40 S.Ct. 185, 64 L.Ed. 322 (1920) ("The law uses familiar legal expressions in their familiar legal sense....").  And if we give this term of art its settled meaning, we must also reject Steven's position on appeal—that the support statute's general admonition that support should "follow the child" should be taken literally to allow for redirection of child support to any entity providing sustenance to a child of divorce.

## B

¶ 20 Under Utah law, the legal right and duty to control and supervise a child are established in accordance with specific procedures and standards set forth by statute. The support statute at issue here identifies three types of custody changes that implicate redirection of support payments without a change in the support order—physical custody changes to (1) a parent of the child, (2) "a relative to whom physical custody ... has been voluntarily given," and (3) "the state when the child is residing outside of the home in the protective custody, temporary custody, or custody or care of the state or a state-licensed facility for at least 30 days." UTAH CODE § 78B–12–108(2).  Each of these changes in physical custody is accomplished under specific standards and procedures set forth by statute.  None contemplates that a minor like J.H. may alter the legal rights and duties attendant to physical custody by voting with her feet and running away to live at a homeless shelter.

¶ 21 Under the first scenario, a parent may obtain physical custody of a child by filing a motion to modify a physical custody order under Utah Code section 30–3–10.4. This provision requires a hearing and sets forth specific procedures a court must follow, as well as factors it must consider in making such a determination, including the best interests of the child.[15]  Custody may similarly be trans-

---

had the requisite 'physical custody' of the child ... by having actual physical control as a result of placement by the department."); *Taylor v. Taylor,* 306 Md. 290, 508 A.2d 964, 967 & n. 4 (1986) ("Physical custody ... means the right and obligation to provide a home for the child and to make the day-to-day decisions required.... [A] parent exercising physical custody over a child ... necessarily possesses the authority to control and discipline the child during the period of physical custody.").

**13.**  *See also Henderson v. Henderson,* 174 Mont. 1, 568 P.2d 177, 179 (1977) (" 'Physical custody' is not limited to having actual, immediate control of the physical presence of the child.  Rather, this phrase relates to the custodial rights involved in the care and control of the child.").

**14.**  *See, e.g.,* MASS. GEN. LAWS ch. 209B, § 1 (2011); N.M. STAT. ANN. § 30–4–4(A)(4) (2011); 23 PA CONS STAT § 5322 (2010), PA R. CIV P. No.1915.1 (2011); *see also* MINN STAT § 518.003(3)(c) (2010) (" 'Physical custody and residence' means the

routine daily care and control and the residence of the child."); N.C. GEN.STAT § 48–1–101(12) (2011) (" 'Physical custody' means the physical care of and control over an individual."); S.C.CODE ANN. § 63–7–20(17) (2010) (" 'Physical custody' means the lawful, actual possession and control of a child."); WYO. STAT ANN. § 14–3–402(a)(vii) (2011) (" 'Custodian' means a person, institution or agency responsible for the child's welfare and having legal custody of a child by court order or having actual physical custody and control of a child and acting in loco parentis....").

**15.**  The court must make specific written findings that a "substantial change in circumstances has occurred" and that modifying the order is in the best interest of the child.  UTAH CODE § 30–3–10.4(2)(b).  If the child is thriving, the court must give substantial weight to the existing order.  *Id.* § 30–1–10.4(2)(c).  Additionally, the court must consider reasonable alternatives to modifying the order.  *Id.* § 30–3–10.4(3).

ferred to a relative (under the second scenario) under section 30-3-10.4 if a parent files a motion to modify the order in behalf of the relative. Such a change could also be accomplished through an adoption proceeding, in which case the Utah Code requires that a petition for adoption be filed before "custody and control" can be transferred to the adoptee. *Id.* § 78B-6-134(1).

¶ 22 The third scenario, in which the state gains physical custody, also involves detailed procedures and standards codified by statute. First, the state must comply with specific requirements for taking a child into protective custody, *see id.* § 62A-4a-202.1, including the requirement of a shelter hearing.[16] Temporary custody then requires approval in a judicial hearing under procedures prescribed by statute,[17] *see id.* §§ 78A-6-106, -108, as does transferring a child into a state licensed facility, *see id.* § 78A-6-117.

¶ 23 The code also sets forth detailed procedures for transferring physical custody in other circumstances, such as emancipation,[18] foster care, and adoption.[19] And a party can seek a change in physical custody if the child is likely to "suffer serious imminent physical harm or removal from the state" by filing a formal writ of assistance to take physical custody. *Id.* § 78B-3-311(1).[20]

¶ 24 As these provisions illustrate, changes in physical custody are effected by means of formal legal processes set forth by statute. The code occupies the field of available mechanisms for changes in physical custody, and it certainly does not allow for the sort of residence-hopping determination of physical custody that Steven has sought here. Rather, changes in physical custody involve formal processes for prospective decisions as to the best interests of the child.

■ ¶ 25 Not all physical custody changes require formal adjudication resulting in a court order. Sometimes physical custody is altered automatically by operation of statute—for example, where "exigent circumstances" prompt a child welfare worker to remove a child from her home. *Id.* § 78A-6-106(2)(a).[21] In those rare circumstances where such a change in physical custody is authorized by statute without the need for a hearing or court order, the new custodian would become entitled to redirected support payments upon the change in custody recognized by statute. But that does not mean that support payments should be redirected any time anyone other than the custodial parent begins to provide shelter and support for the child. Rather, child support should be redirected only to those persons or entities who acquire the rights and responsibilities of the child's new "physical custodian" under the law. Usually that will happen only after adjudication and a formal order, but in all cases it requires fulfillment of the statutory procedures and standards for a change in physical custody. The actual provision of sustenance and support is insufficient.

¶ 26 The contrary view, advanced in this case by J.H.'s father, would inject uncertainty and instability into the law. If physical custody changed every time a child took shelter somewhere other than her custodian's home, the child's best interests would be

---

16. *See id.* § 78A-6-306 (requiring that a shelter hearing be held within 72 hours of putting a child into protective custody, that notice be served on the child's parent or guardian, and detailing the hearing procedures); *see also id.* § 78A-6-307 (detailing the procedures associated with the hearing); *id.* § 78A-6a-302 (detailing the bases for which the court can order that the child be taken into protective custody).

17. Temporary custody is also referred to as the period "from the date of the shelter hearing until disposition." *Id.* § 62A-4a-101(34); *id.* § 78A-6-301.

18. *See id.* § 78A-6-803 (allowing a minor over 16 to petition the court on his own behalf but requiring that notice be served on the parent or

guardian); *id.* § 78A-6-804 (detailing the court procedure).

19. *See id.* § 78A-6-308 (requiring that a background check and other procedures be complied with unless the child is placed with a parent or relative).

20. *See also id.* § 78B-13-311(2) (mandating that the petition be heard within 72 hours).

21. Such a nonadjudicated change in physical custody from the original physical custodian to the State would remain in effect, moreover, unless the court issues an order reversing the child welfare worker's actions. *See id.* § 78A-6-306(9).

jeopardized. Those interests include "[s]tability and continuity," *Moody v. Moody*, 715 P.2d 507, 512 (Utah 1985), and protection from the prospect of "ping-pong custody awards." *Kramer v. Kramer*, 738 P.2d 624, 627 (Utah 1987) (plurality opinion) (internal quotation marks omitted). A "child's development depends upon the continuity and character of [the] relationship with the adult he perceives as his parent," *Jones v. Barlow*, 2007 UT 20, ¶ 88, 154 P.3d 808 (alteration in original) (internal quotation marks omitted), and that relationship would be threatened if child support payments were in jeopardy of being redirected whenever a child is cared for by a third party for any extensive period of time.

### C

¶ 27 Under the above standards, there has been no change in physical custody in this case and the court of appeals was accordingly right to affirm the denial of Steven's motion to redirect child support. First, VOA cannot qualify as a physical custodian because it never sought and could not acquire any supervisory authority or legal right to control J.H. At most, VOA provided J.H. with food and a bed. That has never been enough to sustain a change in physical custody, and we interpret the support statute in accordance with the settled meaning of this legal term of art.

¶ 28 J.H.'s mother has not relinquished the right and responsibility to control and supervise her child. She has continued to care for J.H. by buying her clothes, paying school registration fees, and transporting J.H. to and from dental, medical, and therapy appointments and paying associated fees. And as J.H.'s physical custodian under the law, Kay Hansen retained the legal right and responsibility to continue to care for and supervise her until someone else was assigned that role under the law (or, as happened in this case, until J.H. reached the age of majority).

¶ 29 Second, no one has followed any statutorily prescribed procedure for effecting a legal change in J.H.'s physical custody to VOA, which is not a party to these proceedings anyway. Indeed, there is no established mechanism for a private entity like VOA to obtain physical custody of a child. Because VOA never sought to and could not become J.H.'s physical custodian, we affirm the court of appeals' decision affirming the denial of the motion to redirect child support payments to that entity.

### III

¶ 30 Steven Hansen's motion to redirect child support payments to VOA was based on a misunderstanding of the support statute. The motion was rightly denied by the district court, as the court of appeals noted, because a homeless shelter cannot and did not qualify as the physical custodian of the Hansens' child. We accordingly affirm.

Justice LEE authored the opinion of the Court, in which Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice PARRISH, and Justice NEHRING joined.