*This opinion is subject to revision before final publication in the Pacific Reporter*

**2017 UT 25**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

TRUCK INSURANCE EXCHANGE,
*Appellant,*

*v.*

DANNY L. RUTHERFORD,
*Appellee.*

No. 20150858
Filed April 27, 2017

On Direct Appeal

Third District, Salt Lake
The Honorable Laura Scott
No. 150901805

Attorneys:

Jaryl L. Rencher, Benjamin K. Lusty, Salt Lake City, for appellant

Mark D. Dean, Brett N. Anderson, Kristy L. Bertelsen,
Salt Lake City, for appellee

JUSTICE HIMONAS authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE DURHAM, and JUSTICE PEARCE joined.

JUSTICE HIMONAS, opinion of the Court:

## INTRODUCTION

¶ 1    Danny Rutherford suffered extensive injuries when the work van he was driving was hit by a vehicle that had run a red light. Mr. Rutherford sought compensation from both his employer's workers' compensation insurer and Truck Insurance Exchange (TIE), which provides Mr. Rutherford's employer with underinsured motorist coverage. Mr. Rutherford seeks double recovery, arguing that Utah Code section 31A-22-305.3(4)(c)(iii) —

which states that underinsured motorist coverage "may not be reduced by benefits provided by workers' compensation insurance"—means that underinsured motorist insurance must compensate Mr. Rutherford in full, up to the limits of the policy, irrespective of whether workers' compensation insurance has already covered a portion of the claim. In response, TIE argues that under section 305.3(4)(c)(i) of the same statute—which states that underinsured motorist coverage "is secondary to the benefits provided by" workers' compensation—it should not have to pay benefits that workers' compensation has or should have covered. We hold that TIE's status as a secondary insurer means that it must fully compensate Mr. Rutherford within its policy limits, but only for damages in excess of what workers' compensation paid, so as to avoid an inappropriate double recovery. We therefore reverse the district court's contrary grant of summary judgment.

## BACKGROUND

¶ 2    Mr. Rutherford was driving a company van in the course of his employment when he was struck by an underinsured driver, leaving him with significant injuries. In the wake of his accident, Mr. Rutherford filed several claims for insurance compensation.

¶ 3    The first claim, to Mid Century Insurance, was for workers' compensation benefits for medical expenses, lost income, and permanent disability. Although Mr. Rutherford's medical expenses exceed $250,000, Mid Century Insurance has paid only $183,628.81 for medical expenses. It has also paid benefits for lost wages and permanent disability. Mr. Rutherford also recovered $50,000 from the other driver's insurance, although Mid Century Insurance subsequently recovered about $28,000 of that total in a subrogation action. Finally, because Mr. Rutherford was acting in the scope of his employment when the crash occurred, he also filed a claim with TIE, which insures Mr. Rutherford's employer. Mr. Rutherford sought to recover full benefits under TIE's underinsured motorist (UIM) policy for medical expenses, lost income, lost vocational capacity, future medical expenses, pre- and post-judgment interest, and general damages.

¶ 4    Both Mr. Rutherford and TIE filed motions for summary judgment. TIE sought a declaration that it was not liable to pay Mr. Rutherford medical expenses, lost income, or permanent or

temporary disability benefits, which it argued Mid Century Insurance should pay or has already paid. Mr. Rutherford argued that Utah Code section 31A-22-305.3(4)(c) and the collateral source rule prohibited TIE from deducting workers' compensation benefits when determining its liability to Mr. Rutherford. The district court granted summary judgment for Mr. Rutherford, holding that Mr. Rutherford's interpretation "is more consistent with the underlying purpose" of Utah's insurance statutes. The district court also relied on our prior holdings in *Thamert v. Continental Casualty Co.*, 621 P.2d 702 (Utah 1980), and *Lieber v. ITT Hartford Insurance Center, Inc.*, 2000 UT 90, 15 P.3d 1030, in which we stated that a UIM insurer "should not be permitted to offset payments received by the plaintiff as workmen's compensation." *Thamert*, 621 P.2d at 704; *see also Lieber*, 2000 UT 90, ¶ 24. TIE timely appealed. We have jurisdiction over this matter under Utah Code section 78A-3-102(3)(j).

## STANDARD OF REVIEW

¶ 5   Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." UTAH R. CIV. P. 56(a). We review the district court's grant or denial of summary judgment for correctness, drawing all reasonable inferences from the facts in the light most favorable to the nonmoving party. *Massey v. Griffiths*, 2007 UT 10, ¶ 8, 152 P.3d 312.

## ANALYSIS

¶ 6   At issue in this case are two provisions of Utah's underinsured motorist coverage statute: Utah Code section 31A-22-305.3(4)(c)(i), which says that underinsured motorist coverage "is secondary to the benefits provided by" workers' compensation, and section 305.3(4)(c)(iii), which provides that underinsured motorist coverage "may not be reduced by benefits provided by workers' compensation insurance." TIE argues that the use of "secondary" in section 305.3(4)(c)(i) means it should be able to offset its potential liability by any payments Mr. Rutherford has received from his workers' compensation policy. To hold that a UIM insurer could not take into account what the injured driver has already received, TIE argues, would read the term "secondary" out of the statute. Mr. Rutherford, on the other hand, focuses on section 305.3(4)(c)(iii), arguing that the

plain language of the statute prohibits TIE from reducing its UIM benefits by any workers' compensation benefits.

¶ 7   Our primary goal when interpreting statutes is to "evince the true intent and purpose of the Legislature." *Duke v. Graham*, 2007 UT 31, ¶ 16, 158 P.3d 540 (citation omitted). And it is legal dogma that the best evidence of legislative intent is "the plain language of the statute itself." *State v. Martinez*, 2002 UT 80, ¶ 8, 52 P.3d 1276. But when a statute "adopts a legal term of art . . . with a settled meaning in the law, we interpret the statute to embrace the meaning of the term as it is understood in that context." *Hansen v. Hansen*, 2012 UT 9, ¶ 19, 270 P.3d 531. Applying these principles, we conclude that the statute provides that the UIM insurer must pay benefits until the insured is fully compensated, but that it does not need to duplicate the workers' compensation benefits where doing so would provide the insured with double recovery.

¶ 8   We begin our analysis with the meaning of "secondary" in section 305.3(4)(c)(i). We first note that, like "primary coverage," "secondary coverage" is a well-established term of art in the insurance context. *See Li v. Enter. Rent-A-Car Co. of Utah*, 2006 UT 80, ¶ 21, 150 P.3d 471 (noting term-of-art meaning of "primary coverage" and distinguishing it from "secondary coverage"). "Secondary coverage" is synonymous with "excess coverage," *id.*, which is "[a]n agreement to indemnify against any loss that exceeds the amount of coverage under another policy." *Excess coverage*, BLACK'S LAW DICTIONARY (7th ed. 1999). We applied this term-of-art meaning of secondary coverage in *Lopez v. United Automobile Insurance Co.*, in which an injured driver attempted to recover underinsured motorist coverage benefits. 2012 UT 10, 274 P.3d 897. We held that because the UIM statute provided that UIM coverage was "secondary to the liability coverage of an owner or operator of an underinsured motor vehicle," the driver was "entitled to be compensated by [the UIM insurer] only for damages *in excess* of those for which she was compensated by the other motorist's insurer." *Id.* ¶ 31 & n.41. It is clear, then, that the term "secondary" in section 305.3(4)(c)(i) means that UIM coverage applies only after the workers' compensation benefits have been exhausted. For example, if the workers' compensation insurer and the UIM insurer both provide coverage up to $100,000 and the insured's damages are $150,000,

the insured would exhaust workers' compensation benefits to the tune of $100,000 and then receive $50,000 from the UIM insurer.

¶ 9    But TIE's status as a secondary insurer does not mean that it can reduce its coverage by the benefits provided by workers' compensation insurance in violation of Utah Code section 31A-22-305.3(4)(c)(iii). In keeping with the meaning of "coverage" as the "amount available to meet liabilities," WEBSTER'S NEW COLLEGIATE DICTIONARY (8th ed. 1973), TIE cannot lower its policy limits in response to the benefits that workers' compensation pays. *See State Farm Mut. Auto. Ins. Co. v. Schatken*, 737 S.E.2d 229, 235–37 (W. Va. 2012) (interpreting similar statutory language to hold that "coverage" was not reduced where insured could recover up to the UIM policy limits but was prevented from getting double recovery). Take, for example, a situation where the UIM insurer offers coverage up to $100,000 and workers' compensation offers coverage up to $50,000. If the insured has damages of $125,000, workers' compensation will first pay $50,000. The UIM insurer may not then argue that the workers' compensation benefits reduce its coverage—that is, they do not reduce the $100,000 UIM policy to $50,000. But the workers' compensation benefits do reduce the benefits that the UIM insurer must pay—after deducting the workers' compensation award of $50,000, the UIM insurer must pay only the remaining $75,000 of the insured's damages. And TIE must still ensure that Mr. Rutherford is fully compensated even within categories where TIE's coverage overlaps with workers' compensation. As TIE agreed during oral argument, because workers' compensation covers only 66⅔ percent of the employee's average weekly wages at the time of the injury, *see* UTAH CODE § 34A-2-412, TIE is obligated to pay the remaining 33⅓ percent to ensure that 100 percent of Mr. Rutherford's damages are covered. This setup ensures complete recovery for the insured while avoiding double recovery.

¶ 10 Our prior cases addressing recovery from workers' compensation and UIM insurers do not, as Mr. Rutherford claims, contradict this conclusion. In both *Lieber v. ITT Hartford Insurance Center, Inc.*, 2000 UT 90, 15 P.3d 1030, and *Thamert v. Continental Casualty Co.*, 621 P.2d 702 (Utah 1980), we simply held that a driver could recover at least some damages under both UIM and workers' compensation coverage. In *Thamert*, we rejected the UIM

insurer's argument that the exclusive remedy clause of the Workers' Compensation Act barred the injured driver from seeking UIM benefits at all. 621 P.2d at 703–04. Similarly, in *Lieber,* we held that the district court erred when it interpreted Utah's uninsured motorist coverage statute "to preclude recovery of both workers' compensation and uninsured motorist benefits in every case." 2000 UT 90, ¶ 11.[1]

¶ 11   But whether an injured driver can recover both workers' compensation and UIM benefits is not at issue in this case, as even TIE does not dispute that "under the present statute, an injured driver can recover workers' compensation benefits and also at least some UIM benefits." The dispute in this case is not whether Mr. Rutherford can recover at all from TIE, but whether he can recover in excess of 100 percent of his damages by recovering under TIE's policy for the same benefits he received from workers' compensation. We hold that he cannot. After Mr. Rutherford's workers' compensation benefits are exhausted, TIE must pay the remainder of his damages up to its policy limits or until Mr. Rutherford is fully compensated.

¶ 12   Our conclusion is bolstered by the fact that double recovery is generally disfavored in insurance law. *See Ohio Cas. Ins. Co. v. Brundage*, 674 P.2d 101, 102 (Utah 1983) (stating that driver "should not have received a double recovery" after already receiving special damages from insurance payment); *Christensen v. Farmers Ins. Exch.*, 669 P.2d 1236, 1239 (Utah 1983) (stating that "this Court will not sanction" an injured driver's attempt to obtain double recovery); *see also Cincinnati Ins. Co. v. Samples*, 192 S.W.3d 311, 316 (Ky. 2006) ("The purpose of UIM coverage is to place the insured in the same position he would have occupied had the tortfeasor been fully insured, not in a better position. [The insured] could not recover damages duplicating his workers' compensation benefits against [the negligent driver]; thus, he cannot recover those same damages against [the UIM insurer]." (citation omitted)); *Gross v. Gen. Cas. Ins. Co.*, 438 N.W.2d 378, 380 (Minn. Ct. App. 1989) ("A basic premise of insurance law is that a double recovery is generally to be avoided.").

---

[1] Neither case addressed the full amount of the insured's damages, so double recovery was not at issue.

¶ 13 Mr. Rutherford makes two arguments why he should be allowed double recovery notwithstanding the language of the UIM statute and the policy of this state disfavoring double recovery in the insurance context. First, he argues that he is entitled to double recovery under the collateral source rule, a common law doctrine that "provides that a wrongdoer is not entitled to have damages, for which he is liable, reduced by proof that the plaintiff has received or will receive compensation or indemnity for the loss from an independent collateral source." *DuBois v. Nye*, 584 P.2d 823, 825 (Utah 1978). However, this rule is not applicable where, as here, the beneficiary of the insurance proceeds is the victim's employer's insurer and not the wrongdoer (or the wrongdoer's insurer). The public policy concerns against allowing a tortfeasor to benefit from an insurer's payments simply do not apply in this situation. *See Gibbs M. Smith, Inc. v. U.S. Fid. & Guar. Co.*, 949 P.2d 337, 345 (Utah 1997) (stating that collateral source rule is not applicable where party who stands to benefit from payment is not the wrongdoer). In any event, section 305.3(4)(c)(i)'s language about secondary coverage represents the legislature's displacement of the common-law collateral source rule with a statute that expressly forbids an employee who has recovered benefits from workers' compensation from recovering the same exact benefits from UIM insurance. *See Wilson v. IHC Hosps., Inc.*, 2012 UT 43, ¶¶ 31–32, 289 P.3d 369 (discussing how legislature "altered the common law" of the collateral source rule by statutorily modifying it for medical malpractice cases).

¶ 14 Mr. Rutherford's second argument as to why he is entitled to double recovery is rooted in Utah Code section 31A-1-201(1), which provides that the insurance code "shall be liberally construed to achieve the purposes stated in Section 31A-1-102." Mr. Rutherford interprets this provision to require that ambiguities in insurance statutes should be resolved in favor of maximizing the insured's recovery. There are several problems with this argument. To begin with, statements of purpose are of limited value when interpreting a statute, as they "may be used to clarify ambiguities" but "are not a substantive part of the statute." *Price Dev. Co. v. Orem*, 2000 UT 26, ¶ 23, 995 P.2d 1237. Additionally, we have walked back some of the "hyperbole" from our previous opinions regarding the canon of liberal construction,

clarifying that it is "simply a tie-breaker" to be used in "the rare case where [the judicial] process yields genuine doubt—in a dead heat without an apparent winner." *Lane Myers Constr., LLC v. Nat'l City Bank*, 2014 UT 58, ¶¶ 26–27, 342 P.3d 749 (alteration in original) (citation omitted). Where we can resolve any doubt about the insurance code's meaning "under the language and structure of the statute," as we do today, "we find no need for a tie-breaker, and thus no relevance for the principle of liberal construction of the Act." *Id.* ¶ 27.

¶ 15　Aside from the fact that the statutory language is clear without resorting to a statement of purpose, we note that of the eleven purposes listed in section 102, none involves encouraging compensation in close cases.[2] Mr. Rutherford does not attempt to connect his "tie goes to the insured" argument to any purpose listed in the statute, and "[t]o the extent [the insured] is advocating policies beyond those embraced in the statutory scheme, he should take them to the legislature or the insurance

---

[2] The purposes of the Insurance Code are to:

(1) ensure the solidity of insurers doing business in Utah; (2) ensure that policyholders, claimants, and insurers are treated fairly and equitably; (3) ensure that Utah has an adequate and healthy insurance market, characterized by competitive conditions, the spirit of innovation, and the exercise of initiative; (4) provide for an insurance department that is expert in the field of insurance and able to enforce the Insurance Code effectively; (5) encourage cooperation between the Insurance Department and other Utah regulatory bodies, as well as other federal and state governmental entities; (6) preserve and improve state regulation of insurance; (7) maintain freedom of contract and enterprise; (8) encourage self regulation of the insurance industry; (9) encourage loss prevention as part of the insurance industry; (10) keep the public informed on insurance matters; and (11) achieve other purposes stated elsewhere in the Insurance Code.

UTAH CODE § 31A-1-102.

commissioner, not to this court." *McArthur v. State Farm Mut. Auto. Ins. Co.*, 2012 UT 22, ¶ 19, 274 P.3d 981.

¶ 16 Even if an ambiguous statute did lay out a purpose encouraging double recovery in such cases, it would have to be balanced against the other enumerated purposes, some of which weigh in favor of the insurance company. *See id.* ¶ 14 ("[T]he UIM provisions of the Code, like most all others, represent an attempt by the legislature to balance competing policy considerations, not to 'advanc[e] a single objective at the expense of all others.'" (second alteration in original) (citation omitted)); *id.* ¶ 23 (noting countervailing purposes listed in the UIM statute); *supra* ¶ 15 n.2.

¶ 17 Because the text and structure of the UIM statute are unambiguous in preventing double recovery, we do not look to the "liberally construed" provision of the insurance code. In harmonizing sections 305.3(4)(c)(i) and (4)(c)(iii), we hold that the district court erred in granting summary judgment to Mr. Rutherford because, as a matter of law, TIE is not obligated to pay benefits that duplicate Mr. Rutherford's workers' compensation benefits.

## CONCLUSION

¶ 18 We hold that, under Utah Code section 31A-22-305.3, a UIM insurer must pay damages in excess of the primary insurer's coverage and it may not reduce its policy limits by the benefits paid by workers' compensation. But in order to avoid an insured's double recovery, a UIM insurer need not duplicate benefits already paid by workers' compensation. In light of our holding, we reverse the grant of summary judgment to Mr. Rutherford and remand this matter to the district court for proceedings consistent with our opinion.

———————