AMENDED OPINION*
*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2018 UT 10**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

FIRE INSURANCE EXCHANGE,
*Appellee,*

*v.*

ROBERT ALLEN OLTMANNS,
*Appellant.*

No. 20160304
Filed February  28, 2018

On Certiorari to the Utah Court of Appeals

Second District, Farmington
The Honorable Glen R. Dawson
No. 090700825

Attorneys:

Stewart B. Harman, Joel D. Taylor, Salt Lake City, for appellee

Donald L. Dalton, Salt Lake City, for appellant

JUSTICE HIMONAS authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
and JUSTICE PEARCE joined.

JUSTICE DURHAM filed an opinion concurring in part and concurring
in the result.

Due to her retirement, JUSTICE DURHAM did not participate in the
Petition for Rehearing. JUSTICE PETERSEN became a member of the Court
on November 17, 2017, and, accordingly, participated in the Petition for
Rehearing

JUSTICE HIMONAS, amended opinion of the Court:

## INTRODUCTION

¶1    Robert Oltmanns was named as a defendant in a personal injury case. He filed a claim with his insurer, Fire Insurance Exchange, who questioned whether the claim was covered under the policy. Rather than deny the claim outright, Fire Insurance brought a declaratory judgment action to determine whether the claim was covered under Mr. Oltmanns's policy. The court of appeals ultimately held that it was covered, and Mr. Oltmanns filed a counterclaim seeking attorney fees for the declaratory judgment action, arguing that it was brought in bad faith. The question presented for this court is whether the court of appeals erred in concluding that Fire Insurance's

---

\* Mr. Oltmanns filed a Petition for Rehearing, which we deny. Based on undisputed material facts, the district court determined that, with respect to the "jet skis" exclusion, Fire Insurance "was faced with a fairly debatable question" of coverage. The court of appeals affirmed, concluding that the term was debatable as a matter of law. And we affirmed the decision of the court of appeals. Put differently, and perhaps more plainly, the trial court, the court of appeals, and this court have all concluded that whether the "jet skis" exclusion clearly and unambiguously applied to Mr. Oltmanns's claim was fairly debatable, making summary judgment for Fire Insurance appropriate.

We would ordinarily stop here and refrain from making any additional comments regarding the Petition. But the rhetoric Mr. Oltmanns's counsel chose to employ in the Petition takes this case out of the ordinary. Counsel accuses us of being biased for insurers: "for some reason, since it involved the filing of a declaratory judgment action by an insurance company, the normal rules of contract interpretation—and civil procedure—did not apply." He then goes on to charge that we "unfairly meted out" "savagery" on his client's case. This sort of language, which questions motives rather than ideas, reflects an insufficiency of thought and ineffective advocacy and has no place in filings before the trial or appellate courts of this state.

We admonish counsel for his use of such language. And we take this opportunity to remind him of paragraph 3 of the Utah Standards of Professionalism and Civility—"Lawyers shall not, without an adequate factual basis, attribute to other counsel or the court improper motives, purpose, or conduct."

denial of Mr. Oltmanns's insurance claim was "fairly debatable," thus negating Mr. Oltmanns demand for attorney fees and expenses for the coverage dispute and appeal. We affirm the court of appeals' decision to uphold the summary judgment of the district court.

## BACKGROUND

¶2   In 2006, Mr. Oltmanns was piloting a Honda F-12 AquaTrax personal watercraft that was towing Mr. Oltmanns's brother-in-law, Brady Blackner. Mr. Blackner sustained injuries, and filed a lawsuit against Mr. Oltmanns. Mr. Oltmanns tendered the defense to Fire Insurance Exchange under his homeowner's insurance policy. The insurance policy contains the following provision under Section II - Liability, Coverage E – Personal Liability:

> We pay those damages which an **insured** becomes legally obligated to pay because of **bodily injury, property damage** or personal injury resulting from an occurrence to which this coverage applies. . . . At our expense and with attorneys of our choice, we will defend an **insured** against any covered claim or suit. We are not obligated to pay defense costs, including attorneys' fees of any claim or suit where you select an attorney not chosen by us because there is a dispute between you and us over coverage. We may investigate and settle any claim or suit that we consider proper. Our obligation to defend any claim or suit ends once we have paid our limit of liability.

In the same liability section of the insurance contract, in a subsection titled "Additional Coverages," Fire Insurance agrees to pay "[i]n addition to the limits of liability . . . all costs we incur in the settlement of a claim or defense of a suit with attorneys of our choice."

¶3 Fire Insurance conducted an in-house review of Mr. Oltmanns's claim and then submitted his claim to outside counsel for a coverage opinion. Whether the accident was deemed covered was uncertain because of the following exclusion in its liability coverage:

> We do not cover bodily injury [that] . . . .
>
> 7. results from the ownership, maintenance, use, loading or unloading of:
>
> >   a.  aircraft
> >   b.  motor vehicles
> >   c.  jet skis and jet sleds or

> d. any other watercraft owned or rented to an insured and which:
>> (1) has more than 50 horsepower inboard or inboard-outdrive motor power; or
>> (2) is powered by one or more outboard motors with more than 25 total horsepower; or
>> (3) is a sailing vessel 26 feet or more in length.
>
> Exclusions 7c and d do not apply while jet skis, jet sleds or watercraft are stored.

¶4 Fire Insurance also asked Mr. Oltmanns's attorney to continue to represent him, indicating that Fire Insurance *might* reimburse him for his fees and expenses should the accident be deemed a covered occurrence. Fire Insurance's outside counsel advised Fire Insurance that he believed there was a high probability that the incident would not be covered, but that Fire Insurance should authorize him to file a declaratory judgment action seeking a determination of its responsibility to Mr. Oltmanns under the policy. He advised this course of action because "[u]nder Utah law, a liability insurance carrier's duty to defend is broader than its duty to indemnify," and "[i]t would be dangerous to simply deny coverage because Mr. Blackner and Mr. Oltmanns may enter into an agreement to stipulate to a large judgment and Mr. Oltmanns could then assign his claims against Fire Insurance Exchange to Mr. Blackner."

¶5 Fire Insurance filed the action and then moved for summary judgment. The district court ruled in favor of Fire Insurance, finding that the exclusion precluded coverage. Mr. Oltmanns appealed and the court of appeals reversed, holding that the term "jet ski" as used in the exclusion was ambiguous and construed the contract against the insurer in favor of the insured. *Fire Ins. Exch. v. Oltmanns*, 2016 UT App 54, ¶ 5, 370 P.3d 566. Fire Insurance then settled with Mr. Blackner for the policy limit of $300,000 and paid Mr. Oltmanns's attorney fees and expenses for his defense of that claim.

¶6 Fire Insurance did not pay for Mr. Oltmanns's costs of defending the declaratory judgment action. Mr. Oltmanns then filed a counterclaim against Fire Insurance in the still open declaratory judgment action seeking "damages for breach of the implied covenant [of good faith and fair dealing], which include his attorney fees for prosecuting this coverage action and the successful appeal" as well as "damages for the severe emotional distress that was caused by the coverage denial and his self-defense of a significant personal injury

claim." Fire Insurance once again moved for summary judgment and for a motion to dismiss. The district court granted summary judgment finding that Fire Insurance's actions were reasonable because the coverage issue was "fairly debatable." Fire Insurance then withdrew its motion to dismiss. Mr. Oltmanns appealed and the court of appeals affirmed the district court, holding that "when an insurance company proceeds in a reasonable way to resolve a difficult coverage question, its eventual loss at the appellate level does not foreclose a determination that an issue of interpretation was fairly debatable, as was the case here." *Id.* ¶ 15.

## STANDARD OF REVIEW

¶7    This case comes before us on certiorari review from the court of appeals decision. "[W]e review the court of appeals' decision for correctness. The review focuses on whether the court of appeals correctly reviewed the trial court's decision [to grant summary judgment to Fire Insurance] under the appropriate standard of review." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citation omitted). "We review the district court's grant of summary judgment for correctness." *Torian v. Craig,* 2012 UT 63, ¶ 13, 289 P.3d 479 (citation omitted). Under Utah Rule of Civil Procedure 56, we view any facts and any reasonable inferences "in the light most favorable to the party opposing summary judgment." *Farmers Ins. Exch. v. Call*, 712 P.2d 231, 237 (Utah 1985) (citation omitted).

## ANALYSIS

¶8    In both his trial- and appellate-level briefing, Mr. Oltmanns advanced the same basic argument: because it wasn't "fairly debatable" whether the term "jet ski" encompassed a Honda F-12 Aquatrax (in Mr. Oltmanns view, it obviously did not), Fire Insurance breached its duty to Mr. Oltmanns by seeking a declaratory judgment that the "jet ski" exclusion in Mr. Oltmanns's insurance policy encompassed bodily injuries resulting from the use of that jet-ski-like watercraft. As Mr. Oltmanns has put it:

> [Fire Insurance] relied on the advice of counsel [that an Aquatrax would be encompassed by the "jet ski" policy exclusion] in refusing the tender of defense. However, the advice was patently flawed. Therefore, the claim was not "fairly debatable," and [Fire Insurance] breached the insurance contract and the implied duty of good faith [and] fair dealing.

¶9 On Mr. Oltmanns's account of the governing law, then, whether Fire Insurance breached its duties to Mr. Oltmanns turned entirely on whether the "jet ski" exclusion's applicability to an Aquatrax was fairly debatable: If it was fair for Fire Insurance to argue that the "jet ski" exclusion encompassed an Aquatrax then there was no breach; otherwise, according to Mr. Oltmanns, there was.

¶10 Mr. Oltmanns's argument fails on its own terms. It was more than fair for Fire Insurance to argue that its policy's "jet ski" exclusion applied to bodily injuries resulting from the use of an Aquatrax. In litigating whether the "jet ski" exclusion encompassed Aquatrax accidents, Fire Insurance put forward substantial usage evidence suggesting that the term "jet ski" is, in Fire Insurance's words, a "genericized term for any type of personal watercraft." Fire Insurance's argument is bolstered by the fact that "jet ski" is frequently treated as a generic term in cases, ordinances, and dictionaries. [1] The cited

---

[1] *See, e.g.*, *Calhoun v. Yamaha Motor Corp., U.S.A.*, 40 F.3d 622, 624 (3d Cir. 1994) (noting that a "Wavejammer" is "a type of jet ski manufactured by Yamaha Motor Corporation"); 4 MATTHEWS MUNICIPAL ORDINANCES § 52:32 (2d ed. 2017) ("Boat shall mean any watercraft, including sea planes when not airborne, sailboat, 'jet ski,' 'aqua-trike' or similar type of watercraft"; "Motorboat shall mean any boat operated through use of a motor or motorized propulsion, including 'jet skis[]'"); *Jet Ski,* WIKIPEDIA, https://en.wikipedia.org/wiki/Jet_Ski (last visited Oct. 13, 2017) ("The term [jet ski] is often used generically to refer to any type of personal watercraft used mainly for recreation, and it is also used as a verb to describe the use of this type of water vehicle." (citation omitted)); *Jet Ski*,FREE DICTIONARY http://medical-dictionary.thefreedictionary.com/Jet+Ski (last visited Oct. 13, 2017) (defining "jet ski" as "[a] motorised personal watercraft in which one or two people ride on the water in much the same way as one rides a motorcycle"); *Jet Ski*, LONGMAN DICTIONARY OF CONTEMPORARY ENGLISH http://www.ldoceonline.com/dictionary/jet-ski (last visited Oct. 13, 2017) (A "jet ski" is "a small fast vehicle on which one or two people can ride over water for fun."); *Jet Ski*, WORDWEB ONLINE http://www.wordwebonline.com/search.pl?w=jet+ski (last visited Oct. 13, 2017) (defining "jet ski" as "[a] jet-powered watercraft with a seat and handlebars, ridden in a similar way to a motorbike"); *see also Trial Judge Properly Restricted Expert Testimony in Jet Ski Death Suit* Calhoun v. Yamaha Motor Corp., 1 No. 1 ANDREWS

(cont.)

dictionaries, ordinances, and cases show that the public uses the trademarked term "jet ski" generically, at least on occasion. That suggests that the scope of the term may be fairly debatable.

¶11 That conclusion is also confirmed by the context of the "jet ski" exclusion in the insurance policy. The governing language excludes injury resulting from "the ownership, maintenance, use, loading or unloading of aircraft, motor vehicles, jet skis and jet sleds, or any other watercraft owned or rented to an insured." (numbering omitted). With the exception of jet ski, each of the excluded terms unambiguously refers to the generic name for a category of items. None refers to a specific brand. This supports a generic reading of "jet ski" under the *noscitur a sociis* canon of construction. *See Third Nat'l Bank in Nashville v. Impac Ltd., Inc.*, 432 U.S. 312, 322 (1977) ("[W]ords grouped in a list should be given related meaning." (footnote omitted)). And that further indicates that the scope of "jet ski" is at least fairly debatable.

¶12 True, in a decision from an earlier phase of this case—a decision not currently before us—the court of appeals concluded that the "jet ski" exclusion did not apply to injuries resulting from the use of an Aquatrax, apparently declaring the term "jet ski" irredeemably obscure. *See Fire Ins. Exch. v. Oltmanns*, 2012 UT App 230, ¶¶ 9–10, 285 P.3d 802 ("Even discounting the bizarre possibility that [Fire Insurance] meant to refer only to one Kawasaki watercraft model, it still cannot be definitively said what the insurer intended . . . ."). But, candidly, the

---

EXPERT & SCI. EVIDENCE LITIG. REP. 13 (2003) (Expert testimony was allowed in a case "to explain how jet skis operate and the differences between Yamaha's jet ski and other brands and models."). *But see Definition of "Jet Ski"*, CAMBRIDGE DICTIONARY http://dictionary.cambridge.org/us/dictionary/english/jet-ski (last visited Oct. 13, 2017) (defining "jet ski" as "a brand name for a type of small water vehicle for one or two people that is moved forward by a fast stream of water being pushed out behind it"); *Jet Ski*, DICTIONARY.COM http://www.dictionary.com/browse/jet-ski (last visited Oct. 13, 2017) ("Jet ski" is a "[t]rademark" for "a brand of personal watercraft."); *Jet Ski*, THE FREE DICTIONARY http://www.thefreedictionary.com/Jet-skiing (last visited Oct. 13, 2017) (defining "Jet Ski" as "[a] trademark for a personal watercraft").

correctness of the court of appeals' decision is as open to debate as the issue it resolved.

¶13 The concurrence, however, doesn't affirm the court of appeals on the basis that Mr. Oltmanns's argument fails on its own terms. Instead, the concurrence concludes that Mr. Oltmanns waived his argument that he was entitled to attorney fees because Fire Insurance breached its duties when it sought a declaratory judgment that it did not have to defend Mr. Oltmanns in connection with the Aquatrax accident. It then devotes many pages of dicta to its view that Mr. Oltmanns's "fair debatability" argument analyzed the problem the wrong way. According to the concurrence, Mr. Oltmanns should have characterized his claims against Fire Insurance as "third-party claims." *Infra* ¶¶ 26–27. Under this characterization of Mr. Oltmanns's lawsuit, the concurrence tells us that "fair debatability" is irrelevant. Instead, because it arose in the third-party context, the appropriateness of Fire Insurance's decision to file a declaratory judgment action turned not on whether the "jet ski" coverage question was fairly debatable, but on whether Fire Insurance's position was "reasonable under the circumstances." *Infra* ¶ 28.

¶14 The concurrence then proceeds to outline the entire syndrome of duties and obligations that an insurer owes an insured in the third-party context. Because Fire Insurance's declaratory judgment action arose in the third-party context, the concurrence says that Fire Insurance was operating under a "heightened duty" to act as an agent or fiduciary for Mr. Oltmanns. *Infra* ¶¶ 41–42. It therefore owed Mr. Oltmanns four duties:

> (1) [T]he duty to defend an action brought against [Mr. Oltmanns] that could conceivably fall within the scope of the policy coverage (as defined by the insurance contract), (2) the duty to be fair and reasonable in diligently investigating the validity of claims, (3) the duty to indemnify [Mr. Oltmanns] for valid claims, and (4) the duty to settle claims within the policy limits where possible.

*Infra* ¶ 48.

¶15 And, despite concluding that Mr. Oltmanns failed to preserve his argument that Fire Insurance breached its duty to defend him in the underlying lawsuit arising from the Aquatrax accident, the concurrence

also details the scope and nature of the duty an insurer owes an insured to defend against a third-party lawsuit. *Infra* ¶¶ 49–50.

¶16 We have two problems with the concurrence's analysis. First, we don't agree that Mr. Oltmanns "waived his argument that Fire Insurance breached the implied covenant of good faith by bringing the declaratory judgment action" because he somehow "conceded that [Fire Insurance's decision to file that action] was merited in his brief to the court of appeals and his brief to this court." *Infra* ¶ 24. The court of appeals certainly didn't see it this way. It understood Mr. Oltmanns to have argued that Fire Insurance breached its fiduciary duties in seeking declaratory judgment because the coverage question—whether an Aquatrax was covered by the term "jet ski"—was not "fairly debatable."

¶17 We see this same argument in Mr. Oltmanns's brief to this court. It's true that there are stray comments in Mr. Oltmanns's supreme court briefing to the effect that Fire Insurance "had the right to seek declaratory relief." But the obvious thrust of Mr. Oltmanns's argument is that he is entitled to attorney fees in connection with the declaratory judgment action because "[t]here was no good basis for [Fire Insurance's decision to] fil[e] the declaratory judgment action"— and this because whether the term "jet ski" encompassed an Aquatrax was not a "'fairly debatable' coverage question." We therefore consider this argument on its own terms. And we conclude that, even accepting Mr. Oltmanns's premises—i.e., even accepting that Mr. Oltmanns would be entitled to attorney fees if the coverage question was not fairly debatable—Mr. Oltmanns loses.

¶18 We are also concerned by the concurrence's decision to explain, in detail, the differences between first-party and third-party insurance claims. On its own terms, the concurrence's opinion is good stuff. It's, as Judge Chamberlain Haller might put it, "lucid, intelligent, [and] well thought-out."[2] And it may very well be entirely correct. But this isn't the case for it. Mr. Oltmanns framed his claim as a first-party claim: Fire Insurance is liable because it could not fairly argue—it wasn't "fairly debatable"—that an Aquatrax was a "jet ski." Fire Insurance then responded to this argument on those same terms. As a consequence, nobody—not the parties, not the insurance industry, not

---

[2] MY COUSIN VINNY (20th Century Fox 1992) (overruling a "lucid, intelligent, and well thought-out objection" given the circumstances).

the plaintiffs' bar—is fairly on notice that this is the case in which we intend to announce that an insurer's decision to seek a declaratory judgment in connection with a third-party lawsuit must be analyzed under third-party insurance law. Nor, needless to say, has anybody been put on notice that we're prepared to announce an overarching framework for the analysis and resolution of third-party claims—a framework that, on its face, purports to occupy the field, controlling a vast array of possible insurance lawsuits. We need adversarial briefing before we can fairly do this.

¶19 To be clear, we don't mean that we're categorically bound by litigants' decision to litigate a case under the wrong legal principles (if wrong legal principles they be). We agree with the concurrence that our court will not "be forced to ignore the law just because the parties have not raised or pursued obvious arguments." *Infra* ¶ 27 (quoting *Kaiserman Assocs. v. Francis Town*, 977 P.2d 462, 464 (Utah 1998)).

¶20 But there is a pragmatic reason to draw our decision here narrowly: the law in this area is unsettled. Courts around the country take different approaches to the issues the concurrence resolves. Some courts part ways with the concurrence's repudiation of the "fairly debatable" standard in the third-party context, denying bad faith claims in this context as long as the coverage question on which the insurer sought a declaratory judgment is "fairly debatable." *See, e.g., Universal-Rundle Corp. v. Commercial Union Ins. Co.*, 725 A.2d 76, 89–90 (N.J. Super. Ct. App. Div. 1999) (upholding denial of a bad faith claim against insurer because the coverage question was "fairly debatable" and concluding that "for purposes of evaluating bad faith claims against an insurer, it should [not] matter whether the coverage at issue is first- or third-party"); *Wis. Pharmacal Co. v. Neb. Cultures of Cal., Inc.*, 876 N.W.2d 72, 78 (Wis. 2016) ("[An] insurer does not breach its contractual duty to defend by denying coverage where the issue of coverage is fairly debatable as long as the insurer provides coverage and defense once coverage is established." (alteration in original) (citation omitted)). *But see Hart Constr. Co. v. Am. Family Mut. Ins. Co.*, 514 N.W.2d 384, 391 (N.D. 1994) (applying reasonableness standard to whether an insurer breached its duties to an insured in seeking a declaratory judgment in connection with a third-party lawsuit). Courts also advance different approaches to the duty to defend. *See, e.g., Wis. Pharmacal Co.*, 876 N.W.2d at 78 (noting that an insurer need not necessarily tender defense of a third-party lawsuit during pendency of a declaratory judgment action if it requests "a bifurcated trial on the issues of

coverage and liability[] [andmoves] to stay any proceedings on liability until the issue of coverage is resolved" (first and second alterations in original) (citation omitted)).

¶21 The concurrence claims that the law in Utah is well-settled on all of these issues. *Infra* ¶ 27 n.3. But we've never held that an insurer must defend against all third-party liability claims that could "conceivably" fall within insurance coverage. Nor have we considered whether an insurer may, consistent with its fiduciary obligations, stay the underlying proceedings until any dispute over coverage is resolved. Nor, in our view, have we squarely repudiated any role for the "fairly debatable" standard in the third-party insurance context. And because there are a variety of possible approaches to the issues the concurrence explores, we won't take a stand on any of them until after they have been put squarely before us. Here, the parties have litigated this as a first-party insurance dispute, and we therefore lack the benefit of adversarial briefing on the principles the concurrence elucidates.

¶22 We certainly agree with the concurrence that we shouldn't bind ourselves to a "confuse[d] ... distinction between first-party insurance claims and third-party insurance claims" just because the litigants have potentially misapplied this law. *Infra* ¶ 27. Nor do we need to commit ourselves to a third-party insurance framework in a case where nobody has asked us to. Instead, we chart a middle ground. We affirm the court of appeals on the basis that Mr. Oltmanns's argument isn't persuasive on its own terms—the coverage question was fairly debatable. But we expressly flag, for future litigants, the questions (1) whether claims like those before us should be analyzed under third-party insurance principles and (2) if so, what those principles are.

## CONCLUSION

¶23 For the reasons set forth above, Mr. Oltmanns's claim that Fire Insurance did not fairly evaluate his claim and unreasonably rejected it fails. Thus, we affirm the court of appeals' decision to uphold the district court's grant of summary judgment to Fire Insurance.

———————————————

JUSTICE DURHAM, concurring in part and concurring in the result:

¶24 I concur in the portion of the majority opinion that concludes that Mr. Oltmanns's claim that Fire Insurance did not fairly evaluate his claim and unreasonably rejected it fails. In doing so, I affirm the court of appeals' decision to uphold the summary judgment of the district

court, but do so on alternate grounds. "It is well settled that an appellate court may affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record." *Moss v. Parr Waddoups Brown Gee & Loveless*, 2012 UT 42, ¶ 26, 285 P.3d 1157 (citation omitted). In this case, Mr. Oltmanns waived his argument that Fire Insurance breached the implied covenant of good faith by bringing the declaratory action when he conceded that it was merited in his brief to the court of appeals and his brief to this court. As to the question presented to this court regarding the breach of duty in filing a declaratory judgment, we hold that Fire Insurance was "entitled to seek a declaratory judgment as to its obligations and rights," *Farmers Ins. Exch. v. Call*, 712 P.2d 231, 237 (Utah 1985) (citation omitted), as acknowledged by Mr. Oltmanns.

¶25  I also concur in the majority's decision to reject Mr. Oltmanns's argument that Fire Insurance breached its duty to defend on preservation grounds. Mr. Oltmanns failed to preserve his claim for a breach of the duty to defend in his opposition to Fire Insurance's summary judgment motion.

¶26  Unfortunately, parties and the lower courts have conflated the common law principles regarding insurer's duties under insurance contracts regarding third-party claims against the insured on the one hand, and first-party claims where the insured sues the insurer on the other. While both third-party and first-party claims involve coverage decisions, the relationship of the insurer to the insured, the implied obligations of good faith performance, and the remedies available to the insured are different depending on the type of claim. These differences are significant. "[T]he relationship betweem the insurer and its insured [in a first-party context] is fundamentally different than in a third-party context." *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 799 (Utah 1985) ("This distinction is of no small consequence."). As it relates to this case, the holding does not rest on this distinction because Mr. Oltmanns waived the claim he is bringing before us, so his argument fails regardless of the context in which he brought it. The judgments in the courts below, however may have the effect of confusing our jurisprudence in this area. Therefore, we take this opportunity to clarify well settled principles of law regarding first-party insurance claims and third-party insurance claims as part of our responsibility "[a]s the state's highest court . . . to maintain a sound and uniform body of precedent." *Patterson v. Patterson*, 2011 UT 68, ¶ 20, 266 P.3d 828.

¶27 These principles are clearly laid out in our precedent. To ignore the incorrect approach the parties have taken in this case could set incorrect precedent for future cases and further confuse the distinction between first-party insurance claims and third-party insurance claims. "[S]ettled appellate precedent is of crucial importance in establishing a clear, uniform body of law." *In re United Effort Plan Tr.*, 2013 UT 5, ¶ 18, 296 P.3d 742 (citation omitted). "As the state's highest court, we have a responsibility to maintain a sound and uniform body of precedent and must apply the [correct] law."[1] *Patterson*, 2011 UT 68, ¶ 20. Although we are not actually applying the principles of law governing first-party and third-party insurance claims to the holding of this case, we reiterate the need to clarify the law because of the arguments and judgments made in the briefs and the courts below. The parties' "failure to address the legal question from the right perspective does not render us powerless to work the problem out properly. A court of appeals may and often should do so unbidden rather than apply an incorrect rule of law to the parties' circumstances."[2] *Williams-Guice v. Bd. of Educ.*, 45 F.3d 161, 164

---

[1] The majority would have us apply the principles of law for first-party claims because "the parties have litigated this as a first-party insurance dispute." *Infra* ¶ 21. We think this unwise and believe that where the inappropriate law *has been* argued or applied, the appellate courts have a duty to ensure that the correct law *is* applied: "[a]s a court of last resort, [the supreme court] ha[s] the authority to decide on whatever grounds we deem appropriate, regardless of *preservation* or *presentation*." *State v. Johnson*, 2017 UT 70, ¶ 43, ___ P.3d ___ (alterations in original) (citation omitted). Typically, however, appellate courts under these circumstances would ask for supplemental briefing or a remand to the court below. *See id.* ¶ 45. Because our holding does not rest on the distinction in the law in this case, I do not see the need to do so.

[2] I note that Oltmanns' claim fails *regardless* of whether first-party claim law or third-party claim law applies because he waived his argument as to Fire Insurance's breach of duty in filing a declaratory judgment. I agree with the majority that "Mr. Oltmanns's argument fails on its own terms." *Supra* ¶ 10. However, the reasoning for my holding is that "Fire Insurance was 'entitled to seek a declaratory judgment as to its obligations and rights,'" *supra* ¶ 24, and that Oltmanns acknowledges this right in his brief, thus waiving any claims for attorney fees for that declaratory judgment.

(7th Cir. 1995). "[W]e decline to ignore controlling law because counsel failed to argue it below." *Patterson*, 2011 UT 68, ¶ 21, *see also id.* ¶¶ 18, 20, ("[W]e are unwilling to disregard controlling authority that bears upon the ultimate resolution of a case solely because the parties did not raise it below. . . . And the failure to raise the controlling [precedent] in the district court is a failure that can be appropriately assigned to counsel for both parties.")[3]; *Kaiserman Assocs. v. Francis Town*, 977 P.2d 462, 464 ("In our view, an overlooked or abandoned argument should not compel an erroneous result. We should not be forced to ignore the law just because the parties have not raised or pursued obvious arguments."); *Adkins v. Uncle Bart's Inc.*, 2000 UT 14, ¶ 40, 1 P.3d 528 (same).

¶28  Here, the parties are incorrectly using arguments derived from common-law first-party insurance claims when they should be using the common-law principles of third-party claims. Whether a question of coverage is "fairly debatable" has become a term of art that has only been decided in Utah in the context of first-party claims. Therefore, it is not applicable to this case. Because Mr. Oltmanns's claim falls under

---

[3] I disagree with the majority that because both parties have framed their claim as a first-party claim we must apply first-party insurance claim law to the case. Ultimately, I do not apply either. However, as a court, we are not bound to accept arguments regarding incorrect law. This is clearly a third-party insurance claim, and we have clearly defined precedent regarding third-party claims. Nor do I agree with the majority's claims that the common law in third-party insurance claims is unsettled in Utah. *Supra* ¶ 20. We do not "need adversarial briefing before" we can reiterate what has been litigated by other parties who have had the opportunity to litigate their claims in our adversarial system and been decided by this court. *Supra* ¶ 18. The precedent is clear and has been extensively litigated by those who have had the opportunity to present adversarial briefing. Nor is it pertinent that the law in this area is unsettled in other jurisdictions. *Supra* ¶ 20. It is well settled in Utah and neither party has asked us to reconsider our precedent. In fact, one of the primary cases on insurance law also reached the United States Supreme Court, who only reversed on the amount of punitive damages awarded. *See Campbell v. State Farm Mut. Auto Ins. Co.*, 2001 UT 89, 65 P.3d 1134, *reh'g denied* (2001); *cert. granted* 65 P.3d 1134; *rev'd & remanded on other grounds*, 538 U.S. 408 (2003).

third-party liability law, the relevant questions are whether the insurer initiated the declaratory judgment action to have the court determine a "question of construction or validity" as defined by Utah Code section 78B-6-408 and whether the insurer's inquiry was "reasonable under the circumstances," pursuant to Utah Rule of Civil Procedure 11(b).[4]

¶29 We take this opportunity now, to restate our precedent concerning first-party claims and third-party claims to fulfill our responsibility "[a]s the state's highest court . . . to maintain a sound and uniform body of precedent." *Patterson*, 2011 UT 68, ¶ 20. While insurance policies are contracts at their core, they are treated differently than most contracts under the common law to protect the reasonable expectations of the insured and the insurer. *See generally* Mark A. Geistfeld, *Interpreting the Rules of Insurance Contract Interpretation*, 68 RUTGERS U. L. REV. 371 (2015). This is true for both liability insurance claims where a third party makes a claim against the insured's policy and first-party claims where an insured seeks reparation from its own insurer.

## I. INSURANCE LAW IS CONTRACT LAW THAT CONTAINS ADDED PROTECTIONS FOR THE INSURED

¶30 Basic contract law is based on the assumption that courts act to "adjust a commercial relationship between parties with roughly equal bargaining power." Mark A. Geistfeld, *Interpreting the Rules of Insurance Contract Interpretation*, 68 RUTGERS U. L. REV. 371, 382 (2015) (quoting ROBERT H. JERRY, II & DOUGLAS R. RICHMOND, UNDERSTANDING INSURANCE LAW § 25D(b) (5th ed. 2012)). However, in the context of insurance contracts, the insured is presumed to be "an ordinary, unsophisticated consumer, possessing an understanding of only the most rudimentary aspects of the coverage." *Id.* Thus, courts have "interpret[ed] standard-form insurance policies to protect the ordinary policyholder's reasonable expectations of coverage." *Id.* at 373. Additionally, insurers need to be able to rely on reasonable interpretations to avoid the "risk of legal error that can significantly disrupt the insurer's actuarial calculations," thus keeping insurance available and affordable. *Id.* at 374. Insurance law incorporates all the

---

[4] This rule was amended in May 2016, but the relevant provision here was unchanged.

basic principles of contract law, including the implied duty of good faith and fair dealing. But, because of the nature of insurance contracts, and the importance of the public policy considerations, insurers are held to a higher standard than ordinary merchants.

### A. Public Policy Implications

¶31  The practice of treating questions of interpretation of insurance contracts differently and of providing for broader remedies under certain conditions than contracts in general comes as a result of several public policy implications inherent in insurance contracts. Insurance policies are adhesion contracts. Insurance companies typically use standardized forms, and there is no room for negotiation or approval of specific provisions or exceptions. *See* Douglas R. Richmond, *Trust Me: Insurers Are Not Fiduciaries to Their Insureds*, 88 KY. L.J. 1, 4 (2000); *see also* Geisfeld, *supra* ¶ 29, at 382; MARGARET N. KNIFFIN, 5 CORBIN ON CONTRACTS § 24.27 (Joseph M. Perillo ed., rev. ed., 1998) ("Disparity of bargaining power is likely to exist when a person applies for an insurance policy. The applicant usually has little or nothing to do with the authorship of the policy provisions. The applicant may not even read the policy, being discouraged by the number of terms and the fineness of print. An insurance company normally issues thousands of such policies, using printed forms prepared and approved by its actuaries, officers, and attorneys." (footnote omitted)).

¶32 And, purchasing insurance is not always "voluntary." Insurance coverage is often a requirement of obtaining a mortgage and is mandatory for drivers in Utah. *See* UTAH CODE § 31A-22-302 (requiring owners or operators to carry both no-fault and liability auto insurance). Also, rather than being strictly a commercial relationship, most "insureds purchase their policies for peace of mind and security rather than for financial gain." Richmond, *supra* ¶ 31 at 4 (footnote omitted).

¶33 Because of these policy considerations, "this Court has expressed its commitment to the principle that 'insurance policies should be construed liberally in favor of the insured and their beneficiaries so as to promote and not defeat the purposes of insurance.'" *U.S. Fid. & Guar. Co. v. Sandt*, 854 P.2d 519, 521 (Utah 1993) (citation omitted). This includes construing "ambiguous or uncertain language in an insurance contract that is fairly susceptible to different

interpretations . . . in favor of coverage,"[5] *id.* at 522, and "in light of how the average, reasonable purchaser of insurance would understand the language of the policy as a whole," *id.* at 523.

*B. The Duty of Good Faith and Fair Dealing*

¶34 Insurers have, at minimum, the same implied "duty of good faith and fair dealing implied in all contracts and . . . a violation of that duty gives rise to a claim for breach of contract." *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 798 (Utah 1985). "Every contract or duty . . . imposes an obligation of good faith in its performance and enforcement." U.C.C. § 1-304 (AM. LAW INST. & UNIF. LAW COMM'N 2016). *See also* RESTATEMENT (SECOND) OF CONTRACTS § 205 (AM. LAW INST. 2017) ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."); Aditi Bagchi, Note, *Unions and the Duty of Good Faith in Employment Contracts*, 112 YALE L.J. 1881, 1882 (2003) ("The duty of good faith is a background condition imposed on all contracts that limits the negative effects of unequal bargaining power . . . ."). "'Good faith' . . . means honesty in fact and the observance of reasonable commercial standards of fair dealing." U.C.C. § 1-201(b)(20) (AM. LAW INST. & UNIF. LAW COMM'N 2016).

¶35 In insurance contracts, the good faith performance of an insurer is evaluated by an objective standard that is measured by what a reasonable insured would expect from an insurer. *See Sandt*, 854 P. 2d at 523. "Good faith . . . emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as

---

[5]*But see Truck Ins. Exch. v. Rutherford*, 2017 UT 25, ¶ 14,  395 P.3d 143 (finding that where language is unambiguous in *insurance code* there is "no need for a tie-breaker, and thus no relevance for the principle of liberal construction of *the Act*" (emphases added) (citation omitted)). In *Rutherford*, we noted that our common law interpretation that the "tie goes to the insured" in ambiguous statutes was abrogated by Utah Code sections 31A-1-102 and -201(1). *Id.* ¶ 15. While *Rutherford* required us to interpret the coverage mandated by statute, this case requires us to interpret the coverage mandated in a contract. Our interpretation of insurance contracts is still governed by the common law requirement that we construe insurance contracts "in favor of coverage" when the terms are ambiguous.

involving 'bad faith' because they violate community standards of decency, fairness or reasonableness." RESTATEMENT (SECOND) OF CONTRACTS § 205 cmt. a (AM. LAW INST. 2017). In the insurance context, this court has held "that the implied obligation of good faith performance contemplates, at the very least, that the insurer will diligently investigate the facts to enable it to determine whether a claim is valid, will fairly evaluate the claim, and will thereafter act promptly and reasonably in rejecting or settling the claim." *Beck*, 701 P.2d at 801 (applying this duty in the first-party context); *see also Black v. Allstate Ins. Co.*, 2004 UT 66, ¶¶ 19–20, 100 P.3d 1163 (applying the same standard in the third-party context), *reh'g denied* (2004).

¶36 Insurers are also required to "'deal with laymen as laymen and not as experts in the subtleties of law and underwriting' and to refrain from actions that will injure the insured's ability to obtain the benefits of the contract." *Beck*, 701 P.2d at 801 (citation omitted). Insurers owe a responsibility to their insureds because of their position of authority and control over the underwriting process. *See Allen v. Metro. Life Ins. Co.*, 208 A.2d 638, 644 (N.J. 1965) ("While insurance policies and binders are contractual in nature, they are not ordinary contracts but are 'contracts of adhesion' between parties not equally situated. The company is expert in its field and its varied and complex instruments are prepared by it unilaterally whereas the assured or prospective assured is a layman unversed in insurance provisions and practices. He justifiably places heavy reliance on the knowledge and good faith of the company and its representatives and they, in turn, are under correspondingly heavy responsibility to him."(citations omitted)).

## II. IMPLIED AND CONTRACTUAL DUTIES AND OBLIGATIONS UNDER THIRD-PARTY CLAIMS AND FIRST-PARTY CLAIMS

¶37 While all insurers have a duty of good faith and fair dealing with their insureds, there is a difference in the relationship between the insurer and the insured, the insurer's implied obligations of good faith performance, and the remedies available to the insured depending on whether the claim is a third-party liability claim or a first-party claim. This difference gives rise to an heightened duty in the case of third-party claims.

Durham, J., concurring in part and in the result

### A. Relationships Between Parties

¶38 Third-party cases involve liability, not just coverage. In these cases, a person who is not a party to the insurance contract sues the insured for the losses that are covered by the insurance contract. Insureds seek coverage under their insurance contract for their responsibility for the losses of the third party up to the coverage limit in the policy, tendering the defense of the claim to the insurer. The insurer's duty lies in defending and indemnifying the insured in good faith. An insurer is not in privity of contract with the third party who has made a claim against the company's insured, so the contractual duty to deal fairly and in good faith does not extend to an injured third-party. *See Pixton v. State Farm Mut. Auto Ins. Co.*, 809 P.2d 746 (Utah Ct. App. 1991). An insurer's duties in these claims are owed to the insured, not the third party. *See Black v. Allstate Ins. Co.*, 2004 UT 66, ¶ 20, 100 P.3d 1163 ("When an insurer processes a claim . . . from a third party requesting coverage under the insured's liability policy, the insurer must act in good faith with respect to its own insured."), *reh'g denied* (2004). In third-party claims, the insureds look to the insurers to defend and indemnify them. In essence, the insurer and the insured are on the same side and the third party is the adversary.

¶39 In first-party cases, insureds suffer a loss and then make claims for reparations from their insurers, arguing that the loss is covered by the policy. For example, if a hailstorm damages an insured's roof, she would make a claim under her homeowner's policy for repairs. In these cases, the relationship between the insured and the insurer is more adversarial. They have conflicting interests. The insured wants to get the most compensation possible, and the insurer wants to cover as little as permissible under the contract. "In the [first-party] situation, the insured and the insurer are, in effect and practically speaking, adversaries." *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 799 (Utah 1985) (alteration in original) (citation omitted).

### B. Standard of Care and Implied and Contractual Obligations

¶40 The differences in the relationships between the insured and the insurer in these two types of claims affect the implied obligations of good faith performance. In third-party claims, the insured has a heightened duty that incorporates not only all of the typical contractual obligations of good faith and fair dealing that exist in every insurance contract, but also a duty as a fiduciary to their insureds. First-party claims, on the other hand do not give rise to this heightened duty.

1. Third-Party Heightened Duty

¶41  In third-party cases, there is not only the implied duty of good faith performance that inheres in any insurance contractual relationship, but there is an extended duty because "the insurer acts as an agent for the insured with respect to the disputed claim." *Beck*, 701 P.2d  at 799.

¶42 This heightened duty has been characterized as fiduciary in nature in our prior case law. *See, e.g.,  Black*, 2004 UT 66, ¶ 27 ("[U]pon the initiation of formal legal proceedings . . . the insurer undertake[s] a *fiduciary* duty to defend its insured by appointing counsel and thereafter zealously protecting the interests of its insured in defending or negotiating settlement of the action." (emphasis added)); *Campbell v. State Farm Mut. Auto Ins. Co.*, 2001 UT 89, ¶ 121, 65 P.3d 1134 ("The duties of good faith arising in a third-party context include *fiduciary* duties and are higher duties than the duties arising under the contract theory in a first-party context." (emphasis added)), *reh'g denied*, (2001); *cert. granted*, 65 P.3d 1134; *rev'd &  remanded on other grounds*, 538 U.S. 408 (2003); *Campbell v. State Farm Mut. Auto Ins. Co.*, 840 P.2d 130, 140 (Utah Ct. App. 1992) (noting that "the implied duty of good faith and fair dealing [in a third-party insurance case] . . . . imposes a *fiduciary* duty upon the insurer because of the trust and reliance placed in the insurer by its insured" (emphasis added)); *Beck*, 701 P.2d at 799 ("In essence, the contract itself creates a *fiduciary* relationship because of the trust and reliance placed in the insurer by its insured." (emphasis added)); *Ammerman v. Farmers Ins. Exch.*, 430 P.2d 576, 578 (Utah 1967) ("The covenant in the policy requiring the insurer to defend the insured imposes upon it a *fiduciary* responsibility." (emphasis added)).

¶43 Fiduciary duties are "established, whether by express contract or by conduct and circumstances of the parties, which imply a fiduciary bond and a duty on the party in whom confidence is placed to exercise good faith toward the party reposing that confidence while entering into transactions during the continuance of the relationship." *First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1330 (Utah 1990).

> [T]here are generally two types of fiduciary relationships: "(1) [T]hose specifically created by contract such as principal and agent, attorney and client, and trustee and *cestui que trust,* for example, and those created by formal legal proceedings such as guardian and/or

> conservator and ward, and executor or administrator of an estate, among others, and (2) [T]hose implied in law due to the factual situation surrounding the involved transactions and the relationship of the parties to each other and to the questioned transactions."

*Id.* at 1332 (second and third alterations in original) (citation omitted). Most fiduciary relationships require that the fiduciary "give priority to his beneficiary's best interests whenever he acts on the beneficiary's behalf." Richmond, *supra* ¶ 31, at 1 (citation omitted); *see also Banberry Dev. Corp.*, 786 P.2d at 1333 ("A fiduciary relationship imparts a position of peculiar confidence placed by one individual in another. A fiduciary is a person with a duty to act primarily for the benefit of another." (citation omitted)). It is a duty that requires "undivided loyalty" to the beneficiary. Richmond, *supra* ¶ 31, at 1 (citation omitted).

¶44 Fiduciary duties "arise whenever a continuous trust is reposed by one party in the skill and integrity of another." *Banberry Dev. Corp.*, 786 P.2d at 1333. "Generally in a fiduciary relationship, the property, interest or authority of the other is placed in the charge of the fiduciary." *Id.* (citation omitted). Fiduciary duties can be established by statute[6] or by common law.[7]

¶45 There are, however, some differences between typical fiduciary relationships and the relationship between the insurer and the insured in third-party cases. "In the [third-party] situation, the insurer must act in good faith and be as zealous in protecting the interests of the insured as it would be in regard to its own." *Beck*, 701 P.2d at 799 (alteration in original) (citation omitted). This is a lower standard than that required of a typical fiduciary relationship where the fiduciary must place the interests of the beneficiary above its own. This court described the

---

[6] *See, e.g.*, UTAH CODE § 16-10a-840 (explaining the fiduciary duties owed by directors to a corporation); UTAH CODE § 48-3a-409 (explaining the fiduciary duties owed by members in a member-managed limited liability company); UTAH CODE §§ 22-1-1 to -2, 75-7-801 to -804 (explaining the fiduciary duties owed by the trustee of a trust).

[7] *See, e.g.*, *Daniels v. Gamma W. Brachytherapy, LLC*, 2009 UT 66, 221 P.3d 256; *Christensen & Hensen, P.C. v. Barrett & Daines*, 2008 UT 64, 194 P.3d 931; *Sorensen v. Barbuto*, 2008 UT 8, 177 P.3d 614; *Banberry Dev. Corp.*, 786 P.2d.

nature of the duty of the insurance company as fiduciary in *Ammerman*, adopting a lower fiduciary obligation than that of a typical fiduciary. 430 P.2d at 579 (describing the obligation as one that "should be looked at realistically, and . . . dictated by reason and prudence under the circumstances . . . [with] an awareness . . . that the nature of the risks and the extent of liability under an insurance policy are based on premiums . . . correlated to the legitimate costs of the insurance").

¶46 Some scholars have argued that third-party insurer/insured relationship should not be lumped together with other fiduciary relationships. "If insurers were made to be true fiduciaries, they would lose their ability to hold down premiums by weeding out illegitimate claims, contesting an insured's liability, or disputing a third-party claimant's damages." Richmond, *supra* ¶ 31 at 24. Were this the case, "[t]he cure might then be worse than the illness because insurers would then surely have to fund their new duty through significantly increased premiums." *Id.* We acknowledged this concern in *Ammerman*. 430 P.2d at 578–79 ("It is true that the company cannot properly gamble with or sacrifice the insured's interest simply to protect itself. By the same token it is neither practical nor reasonable to expect it to subvert its own interests entirely to protect the insured by requiring it to accept any offer below the policy limits, regardless of circumstances, and however questionable the issues of liability and damage may be."). However, "the existence of a fiduciary relationship . . . is manifest in . . . [the] confidence of the [insured] in the [insurer]" because "there . . . exist[s] a certain inequality, dependence, . . . business intelligence, knowledge of the facts involved, or other conditions, giving to [the insurer] advantage over the [insured]." *Banberry Dev. Corp.*, 786 P.2d at 1333 (citation omitted). A fiduciary relationship is established by the insurance contract when the insurer contracts to defend the insured for third-party liability claims. *See Grantsville v. Redevelopment Agency of Tooele City*, 2010 UT 38, ¶ 42, 233 P.3d 461 ("A fiduciary relationship 'results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.'" (quoting Wardley Corp. v. Welsh, 962 P.2d 86, 89 (Utah Ct. App. 1998) quoting RESTATEMENT (SECOND) OF AGENCY § 1(1) (AM. LAW INST. 1958)).

¶47 Because of the insurer's special role "[i]n the third party context, . . . an insured may state a cause of action in tort for an insurer's breach of its obligations." *Campbell*, 840 P.2d at 138. "Accordingly, Utah law allows an insured to sue an insurer in tort to

remedy a violation of that duty." *Id.* Thus a breach of the heightened duty of an insurer acting as a fiduciary in third-party cases "renders the insurer answerable in tort to remedy a breach of that duty." *Id.* at 140. This exposes the insurer to the possibility of "consequential and punitive damages awards in excess of policy limits" if they fail to act reasonably in their duties as fiduciary in third-party claims. *Black*, 2004 UT 66, ¶ 25 (citation omitted).

¶48   Insurers owe their insureds four duties in third-party claims: (1) the duty to defend an action brought against their insureds that could conceivably fall within the scope of the policy coverage (as defined by the insurance contract), (2) the duty to be fair and reasonable in diligently investigating the validity of claims, (3) the duty to indemnify their insureds for valid claims, and (4) the duty to settle claims within the policy limits where possible. *See Black*, 2004 UT 66, ¶¶ 20–21 ("When an insurer processes a claim, whether it be from its own insured or from a third party requesting coverage under the insured's liability policy, the insurer must act in good faith with respect to its own insured. In previous cases before this court, we have addressed the good faith duty owed by an insurer to its insured when negotiating settlement of and defending claims brought by third parties. In addition to these duties, we hold today that claims submitted by third parties must be diligently investigated to determine their validity and then reasonably evaluated in light of all the facts. This is a duty the insurer owes to its insured by virtue of the insurance policy. Hence, . . . [the insurer] at least had an obligation to [the insured] to diligently investigate the facts, and then act fairly and reasonably in evaluating and settling the claim. We note that this duty to investigate and reasonably evaluate a third-party claim does not require that the insurer's evaluation ultimately prove to be correct. For example, the fact that a different outcome is reached at a subsequent trial is not dispositive of whether the insurer breached its duty. Rather, whether an insurer discharges its duty in these instances hinges upon whether the investigation and subsequent resolution of the claim is fair and reasonable." (citing Sperry v. Sperry, 1999 UT 101, ¶ 11, 990 P.2d 381; Beck, 701 P.2d at 799–800; *Ammerman,* 430 at 578–79)); *see also* Richmond, *supra* ¶ 31 at 7. If an insurer breaches one of these duties when its insured is being sued by a third party, the insured has a cause of action in contract law for breach of the implied covenant of good faith and in tort law for failure to act as fiduciaries for the insured.

a. The contractual duties to defend and indemnify in third-party claims

¶49 The duties to defend and indemnify the insured are defined by contract. The insurer has a duty to defend as defined in contract, and that duty may well exceed the duty to indemnify. This duty arises when the insurer has obligated itself to defend the insured in the insurance contract and there is a sufficient factual basis for potential liability of a covered incident. "The duty to defend is broader than the duty to indemnify, but the insurer's obligation is not unlimited; the duty to defend is measured by the nature and kinds of risks covered by the policy and arises whenever the insurer ascertains facts which give rise to the potential of liability under the policy." *Deseret Fed. Sav. & Loan Ass'n v. U.S. Fid. & Guar. Co.*, 714 P.2d 1143, 1146 (Utah 1986) (citation omitted). Nevertheless, "an insurer may have a duty to defend an insured even if . . . the insurer is ultimately not liable to indemnify the insured." *Fire Ins. Exch. v. Therkelsen*, 2001 UT 48, ¶ 22, 27 P.3d 555.

¶50 Even where insurers have contracted to defend their insureds in liability cases, they are not required to defend all cases regardless of how frivolous they are or how unlikely it is that the loss is covered by the policy. "Where there is no potential liability, there is no duty to defend." *Deseret Fed. Sav. & Loan Ass'n*, 714 P.2d at 1147 (citations omitted). "When faced with a decision as to whether to defend or refuse to defend, an insurer is entitled to seek a declaratory judgment as to its obligations and rights." *Farmers Ins. Exch. v. Call*, 712 P.2d 231, 237 (Utah 1985). However, an insurer has a duty to defend against a potentially viable third-party liability claim "unless relief is obtained by way of a declaratory judgment." *State Farm Mut. Auto Ins. Co. v. Kay*, 487 P.2d 852, 855 (Utah 1971), *overruled on other grounds by Call*, 712 P.2d 231. Thus, when there is a non-frivolous claim and there is a question as to whether the insurer will have to pay the claim, the insurer should defend the insured until it obtains a declaratory judgment holding that there is no coverage for the loss under the policy. At that point in time, the duty to defend ends.

b. The heightened duty to act as fiduciaries in third-party claims

¶51 Because insurers act as insureds' agents in the disposition of third-party claims, they have an implied heightened duty as fiduciaries to diligently investigate the validity of claims and to settle claims within the policy limits where possible. This duty extends beyond the

duty of good faith and fair dealing that exists in first-party claims. This duty arises because

> [a]n insurer's failure to act in good faith exposes its insured to a judgment and personal liability in excess of the policy limits. . . . The insured is wholly dependent upon the insurer to see that, in dealing with claims by third parties, the insured's best interests are protected. In addition, when dealing with third parties, the insurer acts as an agent for the insured with respect to the disputed claim.

*Beck*, 701 P.2d at 799.

¶52  "With such a dependent relationship must come a standard of care that exists independent of the insurance policy and without specific reference to the policy terms." Richmond, *supra* ¶31 at 7 (footnote omitted); *see also Campbell* 840 P.2d at 138 ("This higher duty is imposed on the insurer because in a third-party situation, the insurer 'controls the disposition of claims against its insured, who relinquishes any right to negotiate on his own behalf.'" (citation omitted)). This heightened duty to act as fiduciaries also exposes insurers to tort liability for breach of these duties.

¶53 This court has held that "claims submitted by third parties must be diligently investigated to determine their validity and then reasonably evaluated in light of all the facts." *Black*, 2004 UT 66, ¶ 20. The fulfillment of this duty is not dependent on the ultimate outcome of the claim. "Rather, whether an insurer discharges its duty in these instances hinges upon whether the investigation and subsequent resolution of the claim is fair and reasonable." *Id.* ¶ 21. If an insurer chooses not to defend an insured in a third-party claim, it must do so only after it has

> *ma[d]e a good faith determination* based on all the facts known to it, or which by reasonable efforts could be discovered by it, *that there is no potential liability under the policy*. This means that there are no disputed facts which if proved by the plaintiff at trial would result in liability under the policy. However, this does not mean that the insurer can simply say, "We don't believe that the plaintiff can prove what he is alleging." *The insurance contract includes the duty to defend [when]* . . . . *the allegations, if proved, could result in liability under the policy.*

*Deseret Fed. Sav. & Loan Ass'n*, 714 P.2d at 1147 (emphasis added) (citations omitted). This duty to diligently investigate claims and to reasonably evaluate them in light of the facts available to determine their validity is not defined by contract and inheres in all third-party claims. Even if an insurer eventually pays for a claim and the associated costs of that claim, this "eventual payment . . . does not necessarily vitiate the insured's cause of action [in tort] for breach of the duty" to defend. *Campbell*, 840 P.2d at 139.

¶54 If an insurer does not defend an action, and a court finds "facts which give rise to the potential of liability under the policy," *Deseret Fed. Sav. & Loan Ass'n*, 714 P.2d at 1146 (citation omitted), the insurer faces significant claims for damages. An insured may bring a contract claim for breach of the contract term promising to defend against third-party claims. *See Beck*, 701 P.2d at 801 ("[A]s parties to a contract, the insured and the insurer have parallel obligations to perform the contract in good faith, obligations that inhere in every contractual relationship."). An insured may also bring tort claims for breach of the insurer's heightened duty in third-party claims. *See id.* at 799 ("[B]ecause a third-party insurance contract obligates the insurer to defend the insured, the insurer incurs a fiduciary duty to its insured to protect the insured's interests as zealously as it would its own; consequently, a tort cause of action is recognized to remedy a violation of that duty." (citation omitted)). Additionally, the insurer may be liable for the entire judgment entered against its insured or any settlement that the insured and the third-party reach even if it exceeds the policy limits. *See* Douglas R. Richmond, *An Overview of Insurance Bad Faith Law and Litigation*, 25 SETON HALL L. REV. 74, 79 & n.30 (1994) ("Under the judgment rule, the mere entry of an excess judgment against the insured is sufficient to hold the offending insurer wholly liable. The reasoning is basic: judgment proof insureds are injured by excess judgments because their credit is potentially impaired, title to their exempt estates may be clouded, their ability to borrow may be eroded, and they may be forced into bankruptcy.").

¶55 In light of this precedent, we leave insurers few options when handling a third-party claim. Insurers must (1) be certain that an occurrence is not covered, *see Deseret Fed. Sav. & Loan Ass'n,* 714 P.2d at 1147 ("The insurer must make a good faith determination based on all the facts known to it, or which by reasonable efforts could be discovered by it, that there is no potential liability under the policy. This means that there are no disputed facts which if proved by the

plaintiff at trial would result in liability under the policy." (citations omitted)); (2) seek a declaratory judgment regarding coverage, *see Call*, 712 P.2d at 237 ("When faced with a decision as to whether to defend or refuse to defend, an insurer is entitled to seek a declaratory judgment as to its obligations and rights."); or (3) pay or settle the claim with the third party. Because of the risks to an insurer of not obtaining a declaratory judgment when there is a belief that the insurer will possibly prevail in a coverage dispute, even if that chance is remote, it is usually reasonable for an insurance company to request the district court to "issue [a] declaratory judgment[] determining rights, status, and other legal relations within its respective jurisdiction," UTAH CODE § 78B-6-401(1), if the insurer determines that the occurrence is not likely covered under the policy.

   c.  The insurer's rights under third-party claims

¶56  Under Utah Code section 78B-6-401, (the declaratory judgment statute) "[e]ach district court has the power to issue declaratory judgments determining rights, status, and other legal relations within its respective jurisdiction . . . . The declaration . . . shall have the force and effect of a final judgment or decree." In *Baird v. State*,[8] we held that the phrase "'rights, status and other legal relations' in the declaratory judgment statute relates to a justiciable controversy where there is an actual conflict between interested parties asserting adverse claims on an accrued set of facts." 574 P.2d 713, 715 (Utah 1978). *See also Miller v. Weaver*, 2003 UT 12, ¶ 15, 66 P.3d 592 ("Stated another way, '[a] justiciable controversy authorizing entry of a declaratory judgment is

---

[8] The operative statute in *Baird*, Utah Code section 78-33-2, was renumbered and amended in 2008 and was the predecessor to Utah Code section 78B-6-401. It read

> Any person interested under a deed, will or written contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

Although some material changes were made in the 2008 statute, what constitutes a "justiciable controversy" remains the same.

one wherein the plaintiff is possessed of a protectible interest at law or in equity and the right to a judgment, and the judgment, when pronounced, must be such as would give specific relief.'" (alteration in original) (citation omitted)). Declaratory judgments are "designed to resolve . . . controversies in order to curtail further problems." *Pintar v. Houck*, 2011 UT App 304, ¶ 25, 263 P.3d 1158.

¶57 In addition to our case law about the rights of a party to bring a declaratory judgment action under Utah Code section 78B-6-401, we have specifically recognized this right under third-party liability case law. The standard is whether the insurer initiated the declaratory judgment action to have the court determine a "justiciable controversy." *See W. Cas. & Sur. Co. v. Marchant*, 615 P.2d 423, 427 (Utah 1980) (holding that "[i]t would not comport with our ideas of either law or justice to prevent any party who entertains bona fide questions about his legal obligations from seeking adjudication thereon in the courts," and "where the plaintiff merely stated its position and initiated [an] action for [a] determination of what appears to be a justiciable controversy" (citing UTAH CONST. art. 1, § 11)). In the third-party insurance claim, an insurer who files a declaratory action to determine its coverage obligations is within its rights to do so provided there is a legitimate question of coverage.[9]

---

[9] Although not at issue on this appeal, we note that in the underlying case which gave rise to this appeal, the district court found the term "jet ski" in the contract to be "clear and unambiguous in that the meaning would be plain to a person of ordinary intelligence and understanding viewing the matter fairly and reasonably, in accordance with the usual and natural meaning of the words . . . ." In the transcript at oral arguments on this issue, the district court stated that in its "best view . . . it would be plain to a person of ordinary intelligence and understanding that the generic term 'jet ski,' as included in the insurance agreement in this case, includes the watercraft involved in this litigation. So I'm going to grant the motion for that reason . . . ." In its memorandum to the district court in support of summary judgment, Fire Insurance attached several websites as exhibits, including boat reviews and a Wikipedia article among others.

Neither the lawyer nor the court explains how a personal "best view" or a self-selected sampling of websites of questionable reliability provides substantial evidence as to how a layman reading the contract

(cont.)

would interpret "jet ski." As recognized by this court and others, lawyers should provide courts with meaningful tools using the best available methods when the court is tasked with determining ordinary meaning. *See FCC v. AT&T, Inc.,* 562 U.S. 397, 40607 (2011); *State v. Rasabout,* 2015 UT 72, 356 P.3d 1258 (Lee, A.C.J., concurring); *State v. Canton,* 2013 UT 44, ¶¶ 13, 20, 27 n.6, 308 P.3d 517; *People v. Harris,* 885 N.W.2d 832, 838–42 (Mich. 2016).

Even though we place great trust in a judge's discernment, a "judge's confidence in her linguistic intuition may be misplaced. . . . Though the human language faculty is very good at assessing which meanings are linguistically permissible in a given context, human intuition is less successful in selecting the most common meaning or common understanding." Stephen C. Mouritsen, *Hard Cases and Hard Data: Assessing Corpus Linguistics as an Empirical Path to Plain Meaning,* 13 COLUM. SCI. & TECH. L. REV. 156, 160–61 (2012) [hereinafter Mouritsen, *Hard Cases*]. When terms are to "be interpreted according to their ordinary meaning, they implicate a set of empirical questions, many of which are amenable to different types of linguistic analysis. . . . [I]n the field of corpus linguistics, scholars . . . determine . . . those meanings that are consistent with common usage," or "the term's ordinary or most frequent meaning" based on empirical data rather than personal intuition. *Id.* at 161. These tools for empirical analysis are readily available to lawyers and should be used when appropriate. *See, e.g., Rasabout,* 2015 UT 72, ¶¶ 57–134, (Lee, J., concurring); *In re Adoption of Baby E.Z.,* 2011 UT 38, ¶¶ 86–105, 266 P.3d 702 (Lee, A.C.J., concurring); Brief for the Project On Government Oversight et al. as Amici Curiae Supporting Petitioners, *FCC v. AT&T, Inc.,* 562 U.S. 397 (2011) (No. 09-1279); 2017 BYU Law Review Symposium, *Law & Corpus Linguistics,* 2017 B.Y.U. L. REV. (forthcoming), http://lawcorpus.byu.edu/; Neal Goldfarb, *Words, Meanings, Corpora: A Lawyer's Introduction to Meaning in the Framework of Corpus Linguistics,* 2017 B.Y.U. L. REV. (forthcoming), https://ssrn.com/abstract=2907485; Stephen C. Mouritsen, *The Dictionary is Not a Fortress: Definitional Fallacies and a Corpus-Based Approach to Plain Meaning,* 2010 B.Y.U. L. REV. 1915; Mouritsen, *Hard Cases, supra*; Daniel Ortner, *The Merciful Corpus: The Rule of Lenity, Ambiguity and Corpus Linguistics,* 25 B.U. PUB. INT. L.J. 101 (2016); James C. Phillips, Daniel Ortner, & Thomas Lee, *Corpus Linguistics & Original Public Meaning: A New Tool to Make Originalism More Empirical,* 126 YALE L.J. FORUM 20 (2016); Neal Goldfarb, LAWN LINGUISTICS, https://lawnlinguistics.com/ (last visited

(cont.)

¶58 Where an insurer files a declaratory judgment action to determine its responsibilities in a third-party claim that comports with Utah Code section 78B-6-401(1) and Utah Rule of Civil Procedure 11(b), the insured is not entitled to attorney fees unless they are provided for in the insurance contract. *See Call*, 712 P.2d at 237–238 ("An award of attorney fees is not warranted 'where the plaintiff merely stated its position and initiated this action for determination of what appears to be a justiciable controversy.'" (citation omitted)); *W. Am. Ins. Co. v. AV&S*, 145 F.3d 1224, 1230 (10th Cir. 1998) (refusing to award attorney fees for a declaratory action where "[t]here is no evidence in the record that West American did not file this action in good faith or was stubbornly litigious").

¶59 However, the right to bring a declaratory judgment action to determine a coverage question does not relieve the insurer of the duty to defend during the pendency of the declaratory judgment action if there is a potentially viable third-party liability claim. "[A]n insurer may have a duty to defend an insured even if . . . the insurer is ultimately not liable to indemnify the insured." *Therkelsen*, 2001 UT 48, ¶ 22. *See also Deseret Fed. Sav. & Loan Ass'n*, 714 P.2d at 1146; *Kay*, 487

---

May 16, 2017) (discussing many contemporary issues regarding corpus linguistics and the law and providing links to various online tools and resources).

Additionally, both Fire Insurance's and the court of appeals' reliance on Wikipedia is ill-advised. *See Fire Ins. Exch. v. Oltmanns,* 2012 UT App 230, 285 P.3d 802. The article cited as authority for using Wikipedia by the majority warns against its use in precisely this kind of case, an appeal from a summary judgment. The article specifically cautions judges to "exercise care when citing a Wikipedia entry because of the collaborative and constantly changing nature of its content," warning that judges "should not rely upon a Wikipedia entry as the sole basis for their holding or reasoning or *to demonstrate the existence or absence of a material fact in the context of a motion for summary judgment*." Lee F. Peoples, *The Citation of Wikipedia in Judicial Opinions*, 12 YALE J.L. & TECH. 1, 50 (2010) (emphasis added). Further, because Wikipedia is a public collaboration it may be a reliable source for possible or permissible definitions of terms, but it can never yield reliable evidence on which of those possible uses are "common" or "ordinary." For that, some type of empirical analysis is required.

P.2d at 855. This duty to defend is defined and governed by the insurance contract, and where it exists, the insurer must defend the insured until the suit is finalized or there is a declaratory judgment that there is no coverage under the policy.

2. First-Party Standard of Good Faith and Fair Dealing

¶60 Because "[n]o relationship of trust and reliance is created by the [insurance] contract" in the first-party situation, the insurance contract "simply obligates the insurer to pay claims submitted by the insured in accordance with the contract." *Beck*, 701 P.2d at 800. "The Utah Supreme Court has found the nature of the relationship between a first-party insurer and its insured to be contractual, rather than fiduciary." *Id.* at 801. "[T]he insured and the insurer have parallel obligations to perform the contract in good faith, obligations that inhere in every contractual relationship." *Id.* (citations omitted).

¶61 Although in the third-party context an insurer's breach of its duties as a fiduciary can expose the insurer to punitive damages in tort liability, a breach of the implied duty of good faith and fair dealing in the first-party context only permits remedies in contract law. *See Id.* at 800 ("Without more [than a breach of duties and obligations of the parties in a first-party relationship], a breach of those implied or express duties can give rise only to a cause of action in contract, not one in tort."). *See also Allapattah Servs., Inc. v. Exxon Corp.*, 61 F. Supp. 2d 1326, 1328 (S.D. Fla. 1999) ("[D]amages for breaches of a contract are generally limited to those that equate to the benefit of the bargain intended to be realized under the terms of the contract, or, in other words, that which the non-breaching party would have received had the contract been performed . . . ."); *Walsh v. Ford Motor Co.*, 627 F. Supp. 1519, 1523 (D.D.C. 1986) ("The central purpose of damages in actions for breach of contract or warranty is to place the plaintiff in the same position he would have occupied had the contract not been breached. Consequently, punitive damages are not awarded for mere breach of contract, regardless of the motives or conduct of the breaching party." (*citing* 5A CORBIN, CORBIN ON CONTRACTS § 992 at 5 (1964); U.C.C. § 1-106(1) (AM. LAW INST. & UNIF. LAW COMM'N); Simpson, *Punitive Damages for Breach of Contract*, 20 OHIO ST. L.J. 284 (1985)).

¶62 However, the damages recoverable under contract law are not constrained by the policy limits. *See Beck*, 701 P.2d at 801–02 ("Damages recoverable for breach of contract include both general damages, i.e., those flowing naturally from the breach, and consequential damages,

i.e., those reasonably within the contemplation of, or reasonably foreseeable by, the parties at the time the contract was made. We have repeatedly recognized that consequential damages for breach of contract may reach beyond the bare contract terms." (citations omitted)).

¶63  If an insurer denies a first-party claim and the insured brings a suit against the insurer, the insurance company does not have to pay the claim until a judgment is made by the court. Noting that "[a]n insured frequently faces catastrophic consequences if funds are not available within a reasonable period of time to cover an insured loss," this court specifically allowed for "damages for losses well in excess of the policy limits" when they are "foreseeable and provable." *Id.* at 802 (citations omitted). Thus, while breach of first-party duties by the insurer only has remedies available under contract law, the damages awarded the insured may exceed the policy limits in the insurance contract. *See id.* at 798 (holding "that the good faith duty to bargain or settle under an insurance contract is only one aspect of the duty of good faith and fair dealing implied in all contracts and that a violation of that duty gives rise to a claim for breach of contract").

¶64  In the first-party context, the insurer does not have a duty beyond the implied duty of good faith and fair dealing. However, this duty still requires an insurer to "diligently investigate the facts to enable it to determine whether a claim is valid, . . . fairly evaluate the claim, and . . . act promptly and reasonably in rejecting or settling the claim." *Id.* at 801 (citations omitted). But as a party to a contract, "[w]hen a claim is fairly debatable, the insurer is entitled to debate it." *Callioux v. Progressive Ins. Co.*, 745 P.2d 838, 842 (Utah Ct. App. 1987).

¶65 Because of the potential harm to insureds from an unpaid legitimate claim, our case law has recognized that an insurer may not deny a claim and require the insured to bring a suit in order to obtain coverage unless the question of coverage is reasonable or "fairly debatable." This "fairly debatable" standard has become a term of art in first-party claims. *See Jones v. Farmers Ins. Exch.*, 2012 UT 52, ¶ 7, 286 P.3d 301 ("Farmers defended against Mr. Jones's causes of action by arguing that his [underinsured motorists] claim was *fairly debatable*." (emphasis added)); *Prince v. Bear River Mut. Ins. Co.*, 2002 UT 68, ¶ 28, 56 P.3d 524 ("The denial of a claim is reasonable if the insured's claim is *fairly debatable*." (emphasis added)); *Billings v. Union Bankers Ins. Co.*, 918 P.2d 461, 465 (Utah 1996) ("[A] first-party insurer may [not] be held

liable for breaching the implied covenant on the ground that it wrongfully denied coverage if the insured's claim, although later found to be proper, was *fairly debatable* at the time it was denied." (emphasis added)); *Callioux*, 745 P.2d at 842 ("When a claim is *fairly debatable*, the insurer is entitled to debate it, whether the debate concerns a matter of fact or law." (emphasis added) (citation omitted)). The use of this term of art in our first-party case law predates our 1997 amendment to Utah Rule of Civil Procedure 11(b),[10] which requires a similar standard. However, in addition to the rule 11(b) requirements, the "fairly debatable" standard in first-party insurance claims also incorporates "the implied contractual obligation to perform a first-party insurance contract in good faith," which "contemplates at the very least, that the insurer will diligently investigate the facts to enable it to determine whether a claim is valid, . . . fairly evaluate the claim, and . . . act promptly and reasonably in rejecting or settling the claim." *Beck*, 701 P.2d at 801.

---

[10] Utah Rule of Civil procedure 11(b) states that

[b]y presenting a pleading, written motion, or other paper to the court (whether by signing, filing, submitting, or advocating), an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; . . . the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and . . . the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

## III. MR. OLTMANNS' COUNTERCLAIMS
## AGAINST FIRE INSURANCE

¶66 Where Mr. Oltmanns—either through negligence, inexperience, or a combination of the two—caused injury to his brother-in-law while operating a personal watercraft and his brother-in-law sought to recover his expenses associated with the event, Mr. Oltmanns was potentially liable for those injuries. Mr. Oltmanns turned to his insurer, tendering his defense pursuant to the contract. The insurer diligently investigated the claim, but did not defend Mr. Oltmanns in the personal injury case during the investigation. "Fire Insurance asked Mr. Dalton to continue defending Robert Oltmanns and told him that in the event coverage was extended for the July 2006 accident, Fire Insurance would reimburse him for the costs and fees incurred by Robert Oltmanns." Fire Insurance admits that they "did not offer or propose to defend the claim." Mr. Oltmanns argues that the insurer should not have requested a declaratory judgment action because the ambiguity in the contract is presumed to be interpreted in his favor. Mr. Oltmanns claims that the Fire Insurance inappropriately relied on outside counsel in its decision to file a declaratory judgment. Mr. Oltmanns also claims that Fire Insurance breached its duty of good faith by failing to assume the defense while deciding whether the incident was covered. We address each of these claims in turn.

### A. Mr. Oltmanns's Claim for Attorney Fees for the
### Declaratory Judgment Action

¶67 One remedy that Mr. Oltmanns seeks here is a right to recover attorney fees in the declaratory judgment action under contract law, claiming that Fire Insurance should not have requested a declaratory judgment action. Utah courts do not allow recovery for attorney fees "in the ordinary lawsuit unless it is provided for by statute or by contract," *Am. States Ins. Co. v. Walker*, 486 P.2d 1042, 1044 (Utah 1971), or "where they are a legitimate item of damages caused by the other party's wrongful act," *W. Cas. & Sur. Co. v. Marchant*, 615 P.2d 423, 427 (Utah 1980). This court has applied that standard in the case of insurance contracts where attorney fees have been awarded "in [a] declaratory judgment action" if "the insurance company acted in bad faith or fraudulently or was stubbornly litigious." *Walker*, 486 P.2d at 1044; *see also Doctors' Co. v. Drezga*, 2009 UT 60, ¶ 38, 218 P.3d 598 ("The rule that attorney fees will not be available to a prevailing insured following an action for declaratory relief unless an insurer is found to

have acted fraudulently, stubbornly or in bad faith remains undisturbed. Nor do we intend to abandon the caution that Utah courts have long shown regarding the awarding of attorney fees.").

¶68 We affirm the court of appeals' affirmance of the district court's grant of summary judgment to Fire Insurance on this claim and deny Mr. Oltmanns's request for attorney fees for the declaratory judgment action. Because of the potential liability that is at stake for insurers in third-party cases, insureds face a very high bar in proving that an insurer filed a declaratory judgment in bad faith or to be stubbornly litigious. In this case Fire Insurance relied on the advice of outside counsel. Even though outside counsel believed that Fire Insurance would prevail, he advised Fire Insurance to file a declaratory judgment action to determine coverage. Fire Insurance was "entitled to seek a declaratory judgment as to its obligations and rights," *Farmers Ins. Exch. v. Call*, 712 P.2d 231, 237 (Utah 1985) (citation omitted). Attorney fees for a declaratory judgment action brought in compliance with Utah Code section 78B-6-401 and Utah Rule of Civil Procedure 11, and not provided for in Mr. Oltmanns's insurance contract, are unavailable. *See also* UTAH CODE § 78B-5-825(1) (not awarding "reasonable attorney fees" unless "the court determines that the action or defense to the action was without merit and not brought or asserted in good faith").

¶69 Additionally, Mr. Oltmanns waived the right to argue that Fire Insurance acted in "bad faith or fraudulently or was stubbornly litigious" when it brought a declaratory judgment action for whether the "jet ski" exception applied in his situation. He did so by stipulating in its brief to the court of appeals and to this court that "Fire Insurance was within its rights to file for declaratory relief. For this, it had the advice of counsel," noting that "no one contended" in the district court that "Fire Insurance [did not have] the right to seek declaratory relief." In fact, in Mr. Oltmanns's briefing, his main contention is that Fire Insurance breached its duty because "[a] reasonable response would have been to assume defense of the Blackner action." Failure to assume the defense does not mean that Fire Insurance breached its duty by filing a declaratory judgment. "What Fire Insurance got [from counsel] was a recommendation to file for declaratory judgment. Fire Insurance argued over-and-over in the trial court that it had the right to seek declaratory relief. *No one contended otherwise.* However, it never occurred to Fire Insurance that it could argue the coverage question while at the same time defending its insured." (Emphasis added.) Mr.

Oltmanns's briefing shows that he seeks a remedy for breach of duty to defend through an award of attorney fees for the declaratory judgment action. This is not how the law works. Mr. Oltmanns therefore waived the argument that Fire Insurance brought the declaratory judgment action in bad faith and seeks damages pertaining to the attorney fees for defending the declaratory judgment action only under contract law; this request is without merit. There are no disputed material facts that indicate that Fire Insurance acted in bad faith in filing the declaratory judgment. Thus, summary judgment was appropriate for this claim.

*B. Mr. Oltmanns's Claim of Bad Faith for Relying on Opinion of Outside Counsel*

¶70 Mr. Oltmanns also claimed that Fire Insurance impermissibly relied on the allegedly flawed advice of outside counsel. Thus, he argues, Fire Insurance did not fairly evaluate his claim and unreasonably rejected it. We agree with the court of appeals that "[a]n insurance company may reasonably and fairly rely, at least initially, upon a coverage opinion from qualified outside counsel, received in the course of careful investigation and evaluation of a claim." *Fire Ins. Exch. v. Oltmanns*, 2016 UT App 54, ¶ 15, 370 P.3d 566. Mr. Oltmanns thus does not prevail on this claim.

*C. Mr. Oltmanns's Claim for Breach of Duty to Defend*

¶71 Mr. Oltmanns argued in its operative complaint in the district court and its briefing to the court of appeals and this court that "Fire Insurance breached its duty by failing to assume defense of the Blackner action" breaching "both contractual and implied duties." However, Mr. Oltmanns failed to preserve this argument in their memorandum in opposition to Fire Insurance's motion for summary judgment.

¶72 The Utah Rules of Civil Procedure at the time required that "[t]he motion, memoranda and affidavits [filed in summary judgment actions] shall be in accordance with Rule 7." UTAH R. CIV. P. 56(c) (2014).[11] Summary judgment was required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material

---

[11] Both rule 56 and rule 7 were substantially modified in 2015 to more closely follow the style of the Federal Rules of Civil Procedure. We use the 2014 rules in place at the time the memoranda were filed.

fact and that the moving party is entitled to a judgment as a matter of law." Rule 7(c)(3)(A) requires that "[a] memorandum supporting a motion for summary judgment shall contain a statement of material facts as to which the moving party contends no genuine issue exists." Rule 7(c)(3)(B) requires that "[a] memorandum opposing a motion for summary judgment shall contain a verbatim restatement of each of the moving party's facts that is controverted, and may contain a separate statement of additional facts in dispute."

¶73   Fire Insurance submitted a memorandum in support of their motion for summary judgment, which included statements that "Oltmanns tendered defense," that "Fire Insurance asked [Oltmanns's attorney] to continue defending Robert Oltmanns," and "that in the event coverage was extended, . . . Fire Insurance would reimburse him for the costs and fees incurred." In Mr. Oltmanns's memorandum in opposition to Fire Insurance's motion for summary judgment, Mr. Oltmanns does not use these facts to raise a breach of the duty to defend claim as an additional fact in dispute. Although Mr. Oltmanns raised this claim in his operative counterclaim, this does not nullify the mandate of rule 7(c)(3)(B) to restate controverted claims and raise "additional facts in dispute."

¶74   Because the claim was not raised as a disputed material fact in Mr. Oltmanns's opposition memorandum, it was not preserved. The claim for failure to defend was not properly presented to the district court in its opposition to summary judgment motion, so the court was not properly put on notice that it should rule on the failure to defend claim separately from the claim regarding the declaratory judgment action. *See Donjuan v. McDermott*, 2011 UT 72, ¶ 20, 266 P.3d 839 ("To properly preserve an issue for appellate review, the issue must be raised in the district court. Additionally, the issue must be specifically raised, in a timely manner, and must be supported by evidence and relevant legal authority. The purpose of the preservation requirement is to put the district court on notice of an issue and provide it with an opportunity to rule on it." (citations omitted)).

¶75 I would affirm the court of appeals' decision to uphold the district court's grant of summary judgment, but do so on alternate grounds. Mr. Oltmanns waived his argument that Fire Insurance breached the implied covenant of good faith by bringing the declaratory judgment action when he conceded that it was merited in his brief to the court of appeals and his brief to this court. Therefore, summary judgment on behalf of Fire Insurance was appropriate.

DURHAM, J., concurring in part and in the result